

**Exhibit E**

# OPERATING AGREEMENT
## OF
## P&J REALTY MANAGEMENT, LLC

This Limited Liability Company Agreement (this "Agreement") of P&J REALTY MANAGEMENT, LLC is entered into by JOSEPH H. GARDNER, an individual ("JHG"), and PETER WEISMAN, an individual ("PW") [JHG and PW are individually herein referred to as a "Member", and, collectively together as "Members"].

The Members hereby form a limited liability company pursuant to and in accordance with the Limited Liability Company Law of the State of New York, as amended from time to time (the "Act"), and hereby agree as follows:

1.     **Name.**  The name of the limited liability company formed hereby is P&J REALTY MANAGEMENT, LLC (the "Company").

2.     **Term.**  The term of the Company shall continue until December 31, 2046 or upon the occurrence of one of the events of dissolution set forth in Section 701 of the Act.

3.     **Purpose.** The purpose of the Company shall be to renovate, construct, improve, rent, manage, deal with, sell, convert to other forms of ownership, invest in or dispose of real property, and to engage in all other matters evident or related to the business of investment in real property, directly or through partnerships, other limited liability companies, or corporations.

4.     **Members.**  The name and the business, residence, or mailing address of the Members are as follows:

| Name | Address |
|------|---------|
| Joseph H. Gardner | 36 Sutton Place South<br>Penthouse A<br>New York, New York  10022 |
| Peter Weisman | 66 Kielwasser Road<br>Washington Depot, Ct. 06794 |

5.     **Management; Authority.**

a.     The business and affairs of the Company shall be managed by two (2) Managers (the "Managers"). A Manager need not be a Member of the Company. The initial Managers shall be JHG and PW, each of whom may act individually or together on behalf of the Company, except as otherwise expressly provided herein. It is contemplated that JHG and PW

may, in accordance with the provisions of Section 10 hereof, transfer portions of their interests in the Company to "Related Transferees", as such term is defined in Section 10 hereof. JHG, and any Related Transferees to whom or which he may transfer any portion of his interests in the Company, are herein sometimes referred to as the "Gardner Group". PW, and any Related Transferees to whom or which he may transfer any portion of his interests in the Company, are herein sometimes referred to as the "Weisman Group". JHG, in his capacity as Manager, shall act on behalf of the Gardner Group, and PW, in his capacity as Manager, shall act on behalf of the Weisman Group.

        b.     The Managers shall have exclusive authority to manage and control the business and affairs of the Company although any Member may participate in ministerial and other non-management activities of the Company. Pursuant to the foregoing, the Managers shall have all of the rights and powers of Managers as provided by law subject only to such restrictions contained in this Agreement. Any action taken by the Managers shall constitute the act of, and serve to bind, the Company. In dealing with the Managers acting on behalf of the Company, no person shall be required to inquire into the authority of such Manager to bind the Company. All decisions of the Managers shall be unanimous, although following a decision by the Managers, any one Manager can effectuate such decision (by signing of documents, etc.).

        c.     The Managers are hereby granted the right, power, and authority to do on behalf of the Company all things which in their sole judgment are necessary or desirable to carry out the aforementioned duties and responsibilities including but not limited to, the right, power, and authority to incur all reasonable expenditures; to employ and dismiss from employment any and all employees, agents, independent contractors, attorneys and accountants; to sell, exchange, or grant an option for the sale or exchange of, all or any portion of any Company properties; to borrow money and as security therefor, to mortgage or grant security interests in all or any part of any Company properties; and to execute, acknowledge and deliver any and all instruments to effectuate any and all of the foregoing.

        d.     The Managers shall perform their duties as Managers in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, each Manager shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by: (i) one or more agents or employees of the Company; or (ii) counsel, public accountants or other persons as to matters that such Manager reasonably believes to be within such person's professional or expert competence, as to matters within his designated authority, which such Manager believes to merit confidence, so long as in so relying it shall be acting in good faith and with such degree of care that an ordinarily prudent person in a like position would use under similar circumstances; provided, however, that such Manager shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause reliance on any of the persons listed above to be unwarranted. The provisions of this Agreement, to the extent they restrict the duties and liabilities of a Manager otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Manager. The Managers shall devote such time to the Company business as they, in their sole discretion, shall deem to be necessary to supervise

the Company business and affairs; but nothing in this Agreement shall preclude the employment, at the expense of the Company, of any agent or third party (including firms or corporations owned or controlled by the Managers, directly or indirectly), to manage, improve, renovate, act as broker in connection with the sale or lease of Company property, or provide other services in respect of the Company property, subject to the control of the Managers. The Managers shall not receive any salary or other compensation for their services in managing and supervising the Company business, but nothing contained herein shall preclude any firms or corporations owned or controlled by the Managers from receiving fees, for services rendered to the Company. Nothing in the preceding sentence is intended to, nor shall it be deemed to derogate from, the Managers' right to receive distributions in their capacity as Members of the Company, if applicable.

      e.     The Members and any member of the families of any of them, and any other person or firm to which any of them is related or in which any of them is interested, may engage in or possess any interest in other business ventures of any kind, independently or with others, including, but not limited to, the ownership, management and operation of real property for their own account or for the account of others. The fact that any such person or entity may encounter and take advantage of opportunities to do any of the foregoing himself or on behalf of others in whom he may or may not have an interest shall not subject such person or entity to any liability to the Company or any of the Members on account of the loss of opportunity. Neither the Company nor any Member shall have any right by virtue of this Agreement or the relationship created hereby in or to such ventures or activities or to the income or profits derived therefrom, and the pursuit of such ventures shall not be deemed wrongful or improper.

      f.     The Members comprising the Gardner Group may, by majority vote of the interests held by the Gardner Group, elect to remove the Manager representing the Gardner Group as Manager of the Company only for Cause. The Members comprising the Weisman Group may, by majority vote of the interests held by the Weisman Group, elect to remove the Manager representing the Weisman Group as Manager of the Company only for Cause. As used herein, a removal for "Cause" shall mean that the Manager to be removed shall have (i) engaged in fraud or embezzlement, (ii) committed an act of dishonesty, gross negligence, willful misconduct, or malfeasance that has had a material adverse effect on the Company or any Member, (iii) breached his obligations as set forth in Section 5.d, or (iv) been convicted of any felony or a crime of moral turpitude. Any such removal shall not affect the removed Manager's rights as a Member or constitute his or her withdrawal as a Member, if applicable. Upon removal of JG as a Manager pursuant to the provisions of this paragraph, Douglas B. Gardner, the son of JG ("DBG"), shall serve as the Manager representing the Gardner Group. If DBG shall be unable or unwilling to act as Manager hereunder, then the Gardner Group, by majority vote, shall select a successor Manager to represent the Gardner Group. Upon removal of PW as a Manager pursuant to the provisions of this paragraph, Jesse Weisman, the son of PW ("JW"), shall serve as the Manager representing the Weisman Group. If JW shall be unable or unwilling to act as Manager hereunder, then the Weisman Group, by majority vote, shall select a successor Manager to represent the Weisman Group.

g.    Upon the death, retirement, withdrawal, insanity, incompetency, bank-
ruptcy or insolvency of one or both of the Managers, or the making by one or both of the
Managers of an assignment for the benefit of creditors (each of the foregoing events being herein
referred to as a "disabling event") the Company shall not dissolve, unless within 90 days after the
occurrence of the disabling event, the Members shall elect to dissolve the Company. In the
absence of such election to dissolve, the Members shall continue the Company. If the disabling
event shall occur with respect to the Manager representing the Gardner Group, DBG shall serve
as the Manager representing the Gardner Group. If the disabling event shall occur with respect to
the Manager representing the Weisman Group, JW shall serve as the Manager representing the
Weisman Group. If DBG shall be unable or unwilling to act as Manager hereunder, then if JG
shall have designated, in writing, prior to the occurence of the disabling event as to JG, an
alternate successor Manager to represent the Gardner Group (such alternate successor Manager
being herein referred to as the "Alternate Successor Gardner Manager"), then such Alternate
Successor Gardner Manager shall serve as the Manager representing the Gardner Group. Only if
JG shall fail to designate an Alternate Successor Gardner Manager as herein provided, then the
Gardner Group, by majority vote, shall agree on the appointment and designation of a new
Manager to represent the Gardner Group. If JW shall be unable or unwilling to act as Manager
hereunder, then if PW shall have designated, in writing, prior to the occurence of the disabling
event as to PW, an alternate successor Manager to represent the Weisman Group (such alternate
successor Manager being herein referred to as the "Alternate Successor Weisman Manager"),
then such Alternate Successor Weisman Manager shall serve as the Manager representing the
Weisman Group. Only if PW shall fail to designate an Alternate Successor Weisman Manager as
herein provided, then the Weisman Group, by majority vote, shall agree on the appointment and
designation of a new Manager to represent the Weisman Group. Upon the designation of such
new Manager(s) as aforesaid, such new Manager(s) shall constitute the Manager(s) of the
Company.

h.    The Company shall indemnify and save harmless the Managers from any
loss or damage incurred by him by reason of any act performed by the Managers in good faith on
behalf of the Company as authorized by this Agreement and in furtherance of the interests of the
Company; provided, however, that the foregoing shall not relieve any Managers of liability for
their fraud, bad faith, misconduct or gross negligence on behalf of the Company or in furtherance
of its interests; and further provided that any indemnity under this provision shall be funded out
of and to the extent of Company assets only.

6.    **Capital Accounts; Contributions; Percentage Interests.**

a.    <u>Capital Accounts</u>. i.  A capital account shall be maintained for each
Member. Each Member has contributed to the capital of the Company the amount standing to
the credit of its capital account on the books of the Company, and shall be increased by such
Member's additional contributions to capital, if any, and the share of the net income of the
Company allocated to such member's capital account and decreased by distributions to such
Member and the share of the net losses of the Company allocated to such Member's capital
account.

ii.     Where Section 704(c) of the Internal Revenue Code (the "Code") applies to Company property or where Company property is revalued pursuant to paragraph (b)(2)(iv)(f) of Section 1.704-1 of the Income Tax Regulations, each Member's Capital Account shall be adjusted in accordance with paragraph (b)(2)(iv)(g) of Section 1.704-1 of the Income Tax Regulations as to allocations to the Members of depreciation, depletion, amortization and gain or loss, as computed for book purposes with respect to such property.

iii.     When Company property is distributed in kind (whether in connection with liquidation and dissolution or otherwise), the capital accounts of the Members shall first be adjusted to reflect the manner in which the unrealized income, gain, loss and deduction inherent in such property (that has not been reflected in the capital account previously) would be allocated among the Members if there were a taxable disposition of such property for the fair market value of such property (taking into account Section 7701(g) of the Code) on the date of distribution.

b.     <u>Capital Contributions</u>.  Except as set forth above or otherwise unanimously determined by the Managers, no Member shall have any obligation to contribute additional capital or make any loan to the Company. In the event that any Member obligated to make additional capital contributions pursuant to Section 6(b) hereof shall fail to do so after thirty days prior written notice (the "Defaulting Member") from the Managers, any or all of the Members not then so in default (the "Non-defaulting Members"), may, but shall not be obligated to, contribute to the Company an amount equal to the additional capital contribution required on behalf of the Defaulting Member.  In the event that more than one Non-defaulting Member shall desire to make such contribution, such contribution shall be made by Non-defaulting Members in the same proportion as their then existing interest in the Company, or, in such other ratios as they may mutually agree.  The interest of any Defaulting Member in the Company shall be reduced from, and after any such event of default, by an amount equal to the amount the additional contribution to capital which such Defaulting Member is obligated to, but did not make, bears to the sum of total capital contributions to the Company theretofore made by such Defaulting Member and the amount of the additional contribution to capital which such Defaulting Member is obligated to, but did not make.  Any percentage reduction in Defaulting Member's Company interest pursuant to this Section shall be added proportionately to the interest in the Company of the Non-defaulting Member(s) which shall have made said additional contribution on behalf of such Defaulting Member.  Any such reduction in the Defaulting Member's interest in the Company shall be the sole remedy of the Non-defaulting Members in such event, shall be effective from and after the expiration of the thirty (30) day notice referred to in this Section, and shall constitute a permanent reduction in such Defaulting Member's interest in the Company for the entire ensuing existence of the Company.

    c.    <u>Percentage Interests</u>.  The percentage interests ("Percentage Interests") of the Members in the Company are as follows:

Joseph H. Gardner                                       50%

Peter Weisman                                           50%

    7.    **Allocations.**

    a.    <u>Allocations Generally</u>.  i.  "Net income" and "net loss" mean, for each fiscal year, the Company's income or loss, as the case may be, for U.S. federal income tax purposes, determined in accordance with Section 703(a) of the Code (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in determining net income or net loss), with the following adjustments:

    (1)  any income of the Company that is exempt from U.S. federal income tax and not otherwise taken into account shall be added to net income or subtracted from net loss; and

    (2)  any expenditures of the type described in Section 705(a)(2)(B) of the Code, or treated as Section 705(a)(2)(B) of the Code expenditures pursuant to Regulations Section 1.704-1(b)(2)(iv)(i), and not otherwise taken into account, shall be subtracted from net income or added to net loss.

    ii.  Except as otherwise provided herein, the Members shall share in the assets, liabilities, net income and net losses of the Company in accordance with their Percentage Interests.

    b.    <u>Allocations for tax purposes</u>.  i.  Except as otherwise provided herein, each Member's share of taxable income, gain, loss, deduction or credit shall be allocated in accordance with his Percentage Interest.

    ii.  Solely for tax purposes, in determining each Member's allocable taxable income or loss of the Company, depreciation, depletion, amortization and gain or loss with respect to any contributed property, or with respect to revalued property where the Company's property is revalued pursuant to paragraph (b)(2)(iv)(f) of Section 1.704-1 of the Income Tax Regulations, shall be allocated to the Members in the manner (as to revaluations, in the same manner as) provided in Section 704(c) of the Code.  The allocation shall take into account, to the full extent required or permitted by the Code, the difference between the adjusted

basis of the property to the Member contributing it (or, with respect to property which has been revalued, the adjusted basis of the property to the Company) and the fair market value of the property determined by the Members at the time of its contribution or revaluation, as the case may be.

8.    **Distributions.**  Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Managers.  Subject to the provisions of Section 9 below, such distributions shall be allocated to the Members in accordance with their Percentage Interests.

9.    **Liquidation and Distribution of Assets.**

a.    Upon the dissolution of the Company it shall cease to engage in any further business, except to the extent necessary to perform existing obligations, and shall wind up its affairs and liquidate or distribute its assets.  The Members shall appoint a liquidator (who may, but need not, be a Member) who shall have sole authority and control over the winding up of the Company's business and affairs and shall diligently pursue the winding up of the Company.

b.    Subject to Section 704 of the Act, upon the dissolution of the Company, the proceeds of any liquidation shall be applied as follows: (i) first, to pay all expenses of liquidation and winding up; (ii) second, to pay all debts, obligations and liabilities of the Company in the order of priority as provided by law, other than debts owing to the Members in respect of distributions under Section 507 of the LLCL or on account of Members' contributions; (iii) third, to pay all debts of the Company owing to Members in respect of distributions under Section 507 of the LLCL; (iv) fourth, to the Members in accordance with and to the extent of their respective capital accounts until the capital account of each Member is zero; and (v) fifth, to the Members in accordance with their respective Percentage Interests.

c.    Upon dissolution and completion of the winding up of the Company and distribution of its assets, the liquidator shall cause to be executed and filed with the Secretary of State of the State of New York articles of dissolution in accordance with Section 705 of the Act.

10.    **Transfers/Assignments/Withdrawal/Admission of New Members.**

a.    The Managers shall have the right to admit additional Members.  To accomplish the purposes of this Section, the Managers are authorized to do all things necessary to effect the admission of such additional Member.  The admission of any additional Member pursuant to this Section shall not be cause for termination or dissolution of the Company.

b.    Except as expressly provided in Section 10.e below, a Member may not, without the consent of the Managers transfer, assign or otherwise dispose of all or any portion of his or her legal interest in the Company.  Any purported transfer, assignment or other disposition of a Member's legal interest without such consent shall be void *ab initio* and shall not bind the Company.  However, if the Managers consent thereto, and a duly executed and acknowledged

counterpart of the instrument effecting such assignment, in form and substance satisfactory to the Managers, shall have been delivered to the Managers, then the Member's legal interest may be assigned; provided, however, that the assignee shall not have the right to be admitted as a Member unless: (a) the assignor shall have indicated such intention of substitution in the instrument effecting such assignment; (b) the Managers, in their sole discretion, shall have consented in writing to such admission; and (c) the assignor and the assignee shall have executed and delivered such other instruments as the Managers may deem necessary or desirable to effectuate such admission. Any assignee must also agree to pay, as the Managers shall determine, all reasonable expenses and legal fees relating to his or her admission as a Member, including but not limited to the cost of any required counsel's opinion and preparing, filing and any amendment to the Company's Articles of Organization necessary to effect such admission.

   c. No Member shall have the right to withdraw or resign from the Company without the consent of the Managers, which may be given (or withheld) in the Managers' absolute discretion.

   d. Subject to the terms of Section 5.g hereof, upon the bankruptcy, dissolution, death or disability of a Member, the Company shall not be dissolved and the business of the Company shall be continued without liquidation. The Member's executor, guardian or other legal representative, and/or any assignee of any such person, may become a Member only upon the consent of the Managers (or if there only be one surviving Manager, that Manager) and the other conditions contained in Section 10.b hereof, but shall be entitled to receive the distributions to which the Member was entitled. No Member (or successor in interest) shall be entitled to receive any amounts as a result of his or its bankruptcy, death, dissolution or disability prior to the dissolution and winding up of the Company.

   e. Anything contained herein to the contrary notwithstanding, a Member may, upon notice to the Managers, transfer all or any portion of his interests in the Company to any person who is, or entity that is owned by, the spouse, parents, siblings, issue or other lineal decedents of the transferring Member (any of such persons or entities being herein referred to as a "Related Transferee"). Without limiting the foregoing, any trust, the beneficiaries of which are comprised solely of Related Transferees shall itself be deemed a Related Transferee. Any transfer to a Related Transferee shall be subject to and made in accordance with the conditions set forth in Section 10.b hereof, except for the requirement of consent of the Managers.

   11. **Tax Returns.** The Managers shall prepare or cause to be prepared all tax returns and statements, if any, that must be filed on behalf of the Company with any taxing authority, and to make timely filing thereof. Within 60 days after the end of each calendar year, the Managers shall prepare or cause to be prepared and delivered to each Member a report setting forth in reasonable detail the information with respect to the Company during such calendar year reasonably required to enable each Member to prepare its federal, state and local income tax returns in accordance with applicable law then prevailing.

   12. **Liability of Members.** The Members shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the Act.

13.    **Exculpation of Members.** A Member shall not be liable to the Company or its Members for any breach of duty as a Member of the Company, except if a judgment or other final adjudication adverse to him establishes that his acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained in fact a financial profit or other advantage to which he was not legally entitled.

14.    **Disputes.** Any dispute or controversy arising under, out of, in connection with, or in relation to (i) this Agreement, and any amendment thereof, (ii) the breach thereof, or (iii) the formation, operation or termination of the Company, shall be determined and settled by arbitration in the City of New York by a panel of three members in accordance with the Rules of the American Arbitration Association. Any award rendered therein shall be final and binding upon the Members and their legal representatives and judgment may be entered in any court having jurisdiction thereof. The expenses of such arbitration shall be paid by the party against whom the award shall be entered.

15.    **Amendments.** This Agreement contains the entire agreement of the parties and may be amended only by a writing signed by Members holding a majority of interests in the Company.

16.    **Severability.** If any provision of this Agreement shall be held invalid, illegal or unenforceable to any extent, the remainder of this Agreement shall not be affected and shall be enforced to the fullest extent permitted by law.

17.    **Governing Law.** This Agreement and all rights and remedies related hereto shall be governed by, and construed under, the law of the State of New York, without giving effect to principles of conflicts of law.

18.    **Integration**. This Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings of the parties in connection therewith.

19.    **Headings**. The titles of Sections of this Agreement are for convenience of reference only and shall not define or limit any of the provisions of this Agreement.

20.    **Inconsistency.** In the event of any inconsistency between the terms and provisions contained in this Agreement and the terms and provisions contained in the Articles of Organization for the Company, the terms and provisions contained in the Articles of Organization shall prevail and be controlling.

21.    **Counterparts.** This Agreement may be executed by the parties hereto in one or more counterparts, each of which shall be considered an original, and all of which shall be considered an original, and all of which together constitute but one and the same instrument.

**IN WITNESS WHEREOF,** the undersigned, intending to be legally bound hereby, have duly executed this Agreement as of December 2, 1999.

_____        _____
Joseph H. Gardner                            Peter Weisman

**Exhibit F**

# AMENDMENT

## TO

## PARTNERSHIP AGREEMENT

### OF

### 160 ASSOCIATES L.P.

**THIS AMENDMENT** entered into as of the 25th day of *August*, 2004, by the General and Limited Partners of 160 Associates L.P. (the "Partnership")

**W H E R E A S :**

The Partnership was formed by Agreement dated as of August 21, 1975 (the "Partnership Agreement");

Joseph H. Gardner is a general partner of the Partnership holding a 29% general partnership interest;

Peter Weisman is a general partner of the Partnership holding a 29% general partnership interest;

Joseph H. Gardner desires to convert 28 of his percentage point interests in the Partnership into limited partnership interests in the Partnership, with the result that he shall have a 1% interest in the Partnership as general partner and a 28% interest as a limited partner;

Peter Weisman desires to convert 28 of his percentage point interests in the Partnership into limited partnership interests in the Partnership, with the result that he shall have a 1% interest in the Partnership as general partner and a 28% interest as a limited partner, and further desires to assign such 28% limited partnership interest to Weisman Associates Limited Partnership;

The Partnership has continued to operate after the initial termination date stated in the Partnership Agreement, and the parties hereto desire to extend the stated term of the Partnership; to provide for the possible continuation of the Partnership following the death or resignation of any General Partner; and to approve and ratify all Partnership actions heretofore undertaken by the General Partners;

The parties hereto desire to consent to said conversions and assignment of partnership interests and to amend the Partnership Agreement in order to reflect said conversions and assignment and to amend the Partnership Agreement so as to permit the Partnership to continue under certain circumstances following the death, resignation or other withdrawal event affecting one of the General Partners and to effect certain other amendments in the Partnership Agreement as set forth below.

NOW, THEREFORE, the parties hereto hereby agree to conversions and assignment as described above, and the admission of Weisman Associates Limited Partnership and Joseph H. Gardner as limited partners and further agree as follows:

1.    Paragraph 2 of the Partnership Agreement is amended to read in its entirety as follows:

"2.    The partnership shall be conducted under the name of 160 ASSOCIATES L.P. or such other name as may be selected by the General Partners."

2.    Paragraph 4 of the Partnership Agreement is amended as to read in its entirety as follows:

"4.    The term of the partnership shall be from the date hereof to December 31, 2028, providing, however, that the partnership shall be dissolved prior to such date upon:

(a)    any disposition by the partnership of its entire interest in all of the Property including any mortgage or property interest which may be acquired by the partnership in exchange therefor; or

(b)    the desire of the General Partners to dissolve the partnership manifested as hereinafter set forth; or

(c)    the death or other withdrawal event (as defined in the New York Revised Limited Partnership Act) of any General Partner unless, within 90 days after such withdrawal event, the remaining General Partners, if any, and a majority in interest of the Limited Partners agree in writing to continue the business of the partnership and to the appointment of one or more additional or substitute general partners, if necessary or desired."

3.    Paragraph 5 of the Partnership Agreement is amended to read in its entirety as follows:

"5.    The principal office of the partnership shall be maintained at c/o P&J Realty Management LLC, 104 Fifth Avenue, New York, New York, or at such other place as the General Partners may from time to time determine."

4.    Paragraph 7 of the Partnership Agreement is amended to read in its entirety as follows:

"7.    The Limited Partners and their respective percentage interests

shall be as set forth in Schedule A to this Partnership Agreement, which Schedule A shall be amended from time to time by the General Partners to reflect the admission of any additional or substitute Partner, the withdrawal of any Partner or other event affecting the identity or percentage interest of any Partner.

5.    Subparagraph (a) of paragraph 9 of the Partnership Agreement is amended to read in its entirety as follows:

"(a) Subject to subparagraph (b) hereof, the net profits of the Partnership shall be divided and any losses shall be borne by each of the Partners in the proportions set forth on Schedule A hereto (subject, however, insofar as the Limited Partners are concerned, to the limitation of their liability to the amount of their individual investment in the Partnership)."

6.    Paragraph 18 of the Partnership Agreement is hereby deleted in its entirety and, in lieu thereof, there is inserted the following: "18. [Intentionally omitted.]"

7.    The Partnership Agreement is further amended by appending thereto at the end thereof a Schedule A in the form attached to this Amendment as "Schedule A to Agreement of Limited Partnership of 160 Associates L.P."

8.    The parties hereto hereby ratify and confirm all actions heretofore taken by the General Partners on behalf of the Partnership.

9.    Except as modified herein, the Partnership Agreement shall remain in full force and effect and shall be binding upon the parties thereto.

10.    This Amendment may be executed in any number of counterparts, all of which taken together shall constitute one and the same instruments and any of the parties hereto may execute this Amendment by signing such counterpart. Facsimile signatures shall be valid for the purpose of this Amendment.

[Signature Page Follows]

3

**IN WITNESS WHEREOF,** the parties have executed this Amendment as of the day and year first above written.

_____
JOSEPH H. GARDNER, General Partner and
Limited Partner

_____
PETER WEISMAN, General Partner

WEISMAN ASSOCIATES LIMITED PARTNER-
SHIP, Limited Partner
By:     Weisman Group LLC, general partner

      By:     _____
              Peter Weisman, Manager

_____
ALBERT ERANI, Limited Partner

_____
DENNIS ERANI, Limited Partner

_____
ALAN ADES, Limited Partner

4

**IN WITNESS WHEREOF,** the parties have executed this Amendment as of the day and year first above written.

_____
JOSEPH H. GARDNER, General Partner and
Limited Partner

_____
PETER WEISMAN, General Partner


WEISMAN ASSOCIATES LIMITED PARTNER-
SHIP, Limited Partner
By:     Weisman Group LLC, general partner

      By:  _____
            Peter Weisman, Manager


_____
ALBERT ERANI, Limited Partner


_____
DENNIS ERANI, Limited Partner


_____
ALAN ADES, Limited Partner

4

**IN WITNESS WHEREOF**, the parties have executed this Amendment as of the day and year first above written.

JOSEPH H. GARDNER, General Partner and
Limited Partner

PETER WEISMAN, General Partner

WEISMAN ASSOCIATES LIMITED PARTNER-
SHIP, Limited Partner
By:     Weisman Group LLC, general partner

      By:
              Peter Weisman, Manager

ALBERT ERANI, Limited Partner

DENNIS ERANI, Limited Partner

ALAN ADES, Limited Partner

4

SEP-08-2004  11:52AM  FROM-PJ REALTY MGMT          +212 645 4549        T-536  P.0067007  F-195

**IN WITNESS WHEREOF,** the parties have executed this Amendment as of the day and year first above written.

_____

JOSEPH H. GARDNER, General Partner and
Limited Partner

_____

PETER WEISMAN, General Partner


WEISMAN ASSOCIATES LIMITED PARTNER-
SHIP, Limited Partner
By:     Weisman Group LLC, general partner

     By: _____
           Peter Weisman, Manager

_____

ALBERT ERANI, Limited Partner

_____

DENNIS ERANI, Limited Partner

_____

ALAN ADES, Limited Partner

4

**SCHEDULE A**
**To**
**Agreement of Limited Partnership**
**Of**
**160 ASSOCIATES L.P.**

| NAME | PERCENTAGE INTEREST |
|------|---------------------|
| JOSEPH H. GARDNER, General Partner | 1.0% |
| PETER WEISMAN, General Partner | 1.0% |
| JOSEPH H. GARDNER, Limited Partner | 28.0% |
| WEISMAN ASSOCIATES LIMITED PARTNERSHIP, Limited Partner | 28.0% |
| ALBERT ERANI, Limited Partner | 18.0% |
| DENNIS ERANI, Limited Partner | 3.0% |
| ALAN ADES, Limited Partner | 21.0% |
| JOSEPH H. GARDNER, Limited Partner | 28% |
| PETER WEISMAN, Limited Partner | 28% |

5



**Exhibit G**

FROM :GARDNER 646486 6909            FAX NO. :646 486 6909            Jul. 10 2006 03:16PM P2

Mr. Peter Weisman

1) 100 Fifth Avenue Company
2) East 22nd Street Associates LP
3) 160 Associates LP
4) 14-15 St. Associates LP
5) West 15th Street Associates L.P.
6) West 56th Street Associates L.P.
7) GW Properties LLC
8) 226-228 West 15th Street LLC
9) P&J Realty Management LLC
10) 161 W. 15th Street LLC
11) 468 West Broadway LLC
12) Morton West Associates LLC
13) Fifth-Sixteenth Land Company

May ·      , 2006            *14 .13w 175*

Ms. Danielle Gardner
220 West 15th Street
New York, NY 10011

Re:    **The Above Entities**

Dear Danielle:

I am writing this letter to you in my capacity as General Partner of the above entities 1, 2, 3, 4, 5, 6 and 13 and as Manager of the above entities 7, 8, 9, 10, 11 and 12.

Your father, who died on March 1, 2006, was my partner and friend for many years. However, our business entities must follow certain procedures in order for them to continue to operate successfully, profitably and in the best financial interests of all of our limited partners.

I intend to continue to consult with your mother and with you on all major decisions and to continue to work with our excellent, loyal and devoted staff.

As to above entity 1, each General Partner had the right under our Agreement of Limited Partnership to designate a successor general partner in a "written instrument thereto executed by such...General Partner in recordable form, or in such...Partner's Last Will and Testament. "After reviewing what I have been told is your father's Last Will and Testament, I have not seen any such designation in writing in the prescribed form by him. Since your father did not so designate a successor general partner prior to his untimely death, I am the remaining General Partner. I did not elect to dissolve the partnership within sixty-days, but I shall act henceforth as sole General Partner, while consulting with you and your mother on major issues.

As to above entities 2, 3, 4, 5 and 6, I shall not elect to dissolve the partnerships but shall continue to act as sole General Partner of each while consulting with you and your mother on major issues.

As to above entities 7, 8, 9, and 12, I have the right until the end of this month to call for a dissolution of each entity. I would like to discuss with you and your mother the ramifications for doing so in order to obtain your inputs to whether these (and any other entities) should be dissolved. Until I receive any notice of designation, I shall continue to serve as the sole Manager.

As to the above entities 10, 11 and 13, I am looking forward to working with you as a Co-Manager (and as a Co-General Partner in entity 13), but I ask that: (1) you kindly make no decision without first obtaining my approval in writing in advance and (2) that you consent that I be designated Tax Matters Manager for entity 11.

Kathie and I extend our best wishes to you and your family. We hope for many more years of prosperity and successes.

Sincerely,

Peter Weisman

Cc:    Ms. Charlotte Gardner

2

**Exhibit H**

CONSENT

OF

GENERAL PARTNER OF
160 ASSOCIATES L.P.

W H E R E A S:

160 Associates L.P. (the "Partnership") was formed by Agreement, dated as of August 21, 1975 (as amended, the "Partnership Agreement");

Joseph H. Gardner ("Gardner") was a general partner of the Partnership (a "General Partner"), holding a 1% general partnership interest;

Gardner died on March 1, 2006;

Peter Weisman is a General Partner, holding a 1% general partnership interest;

The Last Will and Testament of Gardner (the "Will") provides that Gardner's general partnership interest in the Partnership be held in a trust to be created under the Will (the "Trust");

Paragraph 4(c) of the Partnership Agreement provides that the Partnership shall dissolve unless, within ninety (90) days of the death of any General Partner, the remaining General Partner and a majority in interest of the limited partners agree in writing to continue the business of the Partnership and to the appointment of one or more additional or substitute General Partners; and

A majority in interest of the limited partners of the Partnership have agreed in writing to continue the business of the Partnership and to the appointment of the Trust as a substitute General Partner to Gardner.

NOW, THEREFORE, the undersigned General Partner, does hereby agree and consent as follows:

1.    The business of the Partnership shall continue.

2.    The substitute General Partner to Gardner shall be the Trust.

3.    By executing this Consent, the Trust hereby (i) accepts its appointment as General Partner, as set forth in this Consent and (ii) agrees to comply with the provisions of the Partnership Agreement.

4. This Consent may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Consent by signing such counterpart. Facsimile signatures shall be valid for the purpose of this Consent.

*[Signature pages follow]*

IN WITNESS WHEREOF, the parties have executed this Consent as of
_____, 2006.

By: _____
Peter Weisman, General Partner

ACCEPTED AND AGREED TO:

THE TRUST CREATED UNDER
ARTICLE "SIXTH" OF THE LAST WILL
AND TESTAMENT OF JOSEPH H. GARDNER

By: _____
Charlotte Gardner, nominated Trustee

By: _____
Danielle B. Gardner, nominated Trustee

By: _____
Lawrence G. Rose, nominated Trustee

*[Signature Page to 160 Associates L.P. General Partner Consent]*

Exhibit I

FROM :GARDNER 646486 6909          FAX NO. :646 486 6909          Jul. 05 2006 02:30PM  P3

# S O K O L O W   C A R R E R A S   L L P

ATTORNEYS AT LAW
770 LEXINGTON AVENUE, SIXTH FLOOR
NEW YORK, NEW YORK 10021-8165
TEL: 212-935-6000   FAX: 212-935-4865

*FYI*

June 28, 2006

Mr. Peter Weisman
P&J Realty Management Co. LLC
104 Fifth Avenue
New York, NY 10011

Re: Purchase of Air Rights:
Block 791, Lot 72, West 16th Street

Dear Pete:

Enclosed is a memorandum to me from the Director of MTA Real Estate. As you can see from his enclosure, he has offered to be of assistance in receiving an expression of interest to purchase air rights. The purchase must be accepted both by the MTA and the City.

If you have any questions, please feel free to call Mr. Roco Krsulic at the MTA directly.

Best regards.

Sincerely yours,

Mark D. Lebow

Encl.

NEW YORK . PARIS . BRUSSELS . ATLANTA

Director
Real Estate Department

**Metropolitan Transportation Authority**

347 Madison Avenue
New York, NY 10017-3739
212 878-7368 Tel
212 878-1055 Fax
rkisulic@mtahq.org

**To:** Commissioner Lebow

**Date:** 6/28/06

**Subject:** Rec. Block 760, Lot 19, Etc.

**Action Requested:**
- ☐ For your approval
- ☑ For your information
- ☐ Reply direct with copy for me
- ☐ Prepare response for my signature
- ☐ Prepare response for signature of: _____

☐ Comment
☐ Please see me
☐ As requested

**Remarks:** THE INTERESTED PARTY SHOULD DIRECT THEIR INTEREST (LETTERS) TO MY ATTENTION AT THE ABOVE ADDRESS, AND MY OFFICE WILL COORDINATE WITH THE CITY (EDC) OR THEY CAN DIRECT THEIR EXPRESSION OF INTEREST TO THE CITY. EITHER WAY THE PROJECT NEEDS TO BE COORDINATED BETWEEN THE TWO OR US (MTA & CITY) Ronk.

CONDOMINIUM No. 1222
REL. PAR. 1

16ᵀᴴ ST.

15ᵀᴴ ST.

ST.

AVENUE   OF   THE   AMERICAS
6ᵗʰ AVE.

BLOCK   LOT   NEW DROP
760       1101-1103   19
CODB. No. 1222       2-12-02

JUN 14 2002.

M 3/4

JUN 14 2002.



FROM : GARDNER 646486 6909    FAX NO. : 646 486 6909    Jul. 05 2006 02:31PM P5