# EXHIBIT A

AGREEMENT made as of this 21st day of August , 1975, among PETER WEISMAN, residing at 445 East 80th Street, New York, N.Y. and JOSEPH H. GARDNER, residing at 160 East 84th Street, New York, N.Y., hereinafter referred to as the General Partners and ALAN ADES, residing at 19 Heathcote Road, Scarsdale, N.Y., ALBERT ERANI, residing at 401 East 81st Street, New York, N.Y. and DENNIS ERANI, residing at 1269 Ocean Parkway, Brooklyn, N.Y. hereinafter referred to as the Limited Partners.

WHEREAS, the General Partners on behalf of themselves have, on January 24, 1975, acquired premises known as 91 Seventh Avenue, New York, N.Y., and more particularly described in Exhibit "A" which is attached hereto and made a part hereof and is herein referred to as "the Property", and

WHEREAS, the parties hereto desire to form a Limited Partnership under the laws of the State of New York for the purposes and on the terms and conditions herein set forth, and

WHEREAS, the General Partners have simultaneously herewith conveyed the property to the Limited Partnership organized pursuant to this agreement,

NOW, THEREFORE, it is mutually agreed as follows:

1.  FORMATION.  The parties do hereby form a Limited Partnership pursuant to the provisions of Article 8 of the Partnership Law of the State of New York.

2.  NAME.  The Partnership shall be conducted under the name of 160 ASSOCIATES.

3.  PURPOSE.  The purpose of the Partnership is to remodel and reconstruct, own, manage, mortgage, create security interests in, lease, improve, exchange, sell or otherwise transfer or dispose of the Property.  To effectuate the foregoing, the partnership is empowered to accept a deed from the General Partners and, from time to time, to transfer the Property to a nominee as shall be deemed necessary and to reimburse the nominee for any costs, charges or expenses to which it has been subjected.

The General Partners have heretofore made advances to pay the full cash consideration to cover the cost of acquisition of the Property and other expenses in connection therewith.

4. TERM. The term of the Partnership shall begin on August 1, 1975, and shall continue until December 31, 1995, provided, however, that the Partnership shall be dissolved prior to such date upon (a) any disposition by the Partnership of the Property including any mortgages or property interests which may be acquired by the Partnership in exchange therefor, or (b) the desire of the General Partners to dissolve the Partnership manifested as set forth in paragraph 20 hereof, or (c) the death, retirement, resignation, bankruptcy, receivership, or incapacity of either of the General Partners as provided in paragraph 18 hereof.

5. PRINCIPAL OFFICE. The principal office of the Partnership shall be maintained at 100 West 15th Street, New York, N.Y. (c/o P. & J. Realty Company) or at such other place as the General Partners from time to time may determine.

6. GENERAL PARTNERS. Peter Weisman and Joseph H. Gardner shall be the General Partners.

7. LIMITED PARTNERS. Alan Ades, Albert Erani and Dennis Erani shall be the Limited Partners.

8. CAPITAL CONTRIBUTION OF LIMITED PARTNERS. The Limited Partners shall contribute to the capital of the Partnership the amount of $60,000 in the proportions set opposite their respective names:

| NAME | AMOUNT |
|---|---|
| Alan Ades | $ 30,000.00 |
| Albert Erani | $ 25,714.00 |
| Dennis Erani | $ 4,286.00 |

9. PROFITS AND LOSSES. (a) Subject to subparagraph (b) hereof, the net profits of the Partnership shall be divided and any losses shall be borne by each of the Partners in the following proportions (subject, however, insofar as the Limited Partners are concerned, to the limitation of their liability to

- 2 -

the amount of their individual investment as herein provided):

| PARTNER | PERCENTAGE |
|---------|-----------|
| Alan Ades | 21% |
| Albert Erani | 18% |
| Dennis Erani | 3% |
| Peter Weisman | 29% |
| Joseph H. Gardner | 29% |

(b) There shall be paid to the General Partners and to the Limi
Partners during the time each of them is a partner of the
Partnership, out of the net cash flow, as hereinafter defined,
any, generated by the operation of the partnership in each
calendar year beginning with the commencement date as hereinaft
defined, the following amounts to be charged against the respec
capital accounts of the partners receiving:

(i)   To the Limited Partners out of the first net
cash flow not to exceed $18,000.00 per annum,
an amount equal to their respective percentages
as shown in (a) above.

(ii)  To each of the General Partners on the next
$25,000.00 per annum of net cash flow in
excess of the $18,000.00 provided in (i) above
an amount equal to one-half (1/2) thereof.

(iii) To the Limited Partners and General Partners,
all net cash flow in excess of $43,000.00 in
amounts equal to their respective percentage
interest as shown in (a) above or as it may
exist from time to time.

(iv)  Said payments as provided in this subparagraph
(b) shall only be paid out of non-cumulative
net cash flow, if any, generated each year by
the operation of the Partnership computed in
accordance with method prescribed in
subparagraph (c) of this Article.

(c) The term "net cash flow" shall mean (1) plus (2) minus the
aggregate of (3) and (4) as follows:

(1) The gross income from the Partnership assets comput
in accordance with sound cash basis accounting principles inclu
ing all income earned or received from all sources whatsoever a
a direct or indirect result of the ownership or operation of th
Partnership assets such as, but without limitation, (i) the gro
amount of all cash payments received whether as rent, additiona
rent, fees, charges or otherwise, (ii) sundry income, (iii)
concession income, (iv) interest on deposits, (v) the net amoun
of any refund or impositions of taxes applicable to any period
this Agreement, (vi) the proceeds from the sale of any property

- 3 -

of or in addition to such cash payments, (vii) the proceeds of any sale of personal property or fixtures now or hereafter located on the Property and Improvements and (viii) the amount any other consideration, tangible or intangible, received in relation to or in connection with the Property and Improvements any appurtenance thereto (but not including (a) proceeds of insurance received and used, or to be used for restoration of t Property and Improvements in the event of damage or destruction thereof or (b) proceeds of any sale, assignment, transfer, or mortgage as permitted herein, of the whole or any part of the interest of a party hereto) received by the Partnership, any of the Partners, the Manager or any other person on behalf of the Partnership, or by any associates, subsidiaries, agents, office directors or employees of any of the Partnership or the Manager or by any corporation, partnership, organization or individual which the Partners or the Manager or their associates, director officers, agents or employees have any interest, direct or indirect, which is attributable in any degree to the ownership, leasing, management, operation, use or servicing of the Propert and Improvements or other assets of the Partnership.

(2) The amount of (1) any unused portion of any capit contributions of the Partners, (ii) any proceeds received from the mortgaging of the Property and Improvements, the refinancin (to the extent that the proceeds exceed the amount of the mortg or deed of trust being refinanced) of any mortgage or deed of trust on the Property and Improvements or the sale of the Property and Improvements or any part thereof; and (iii) any payments received as a result of any other transactions involvi the ownership, operation or maintenance of the Property and Improvements which do not come within (1) above.

(3) In accordance with sound cash basis, accounting principles consistently applied, insurance charges, real estate taxes, assessments, reasonable legal expenses, water, fuel, electricity, repairs and maintenance, supplies, decorating, no fees paid to Certified Public Accountants, reasonable managemen expenses, and any other items which are normally considered

- 4 -

"operating expenses" (excluding, however, any income or franchise tax imposed by Federal, State or local governments on either of the Partners in their individual capacity, plus the aggregate amount of principal and interest paid under mortgages or deeds of trust on the Property and Improvements and under loans incurred in connection with the Property and Improvements as well as the cost of capital acquisitions, alterations or improvements, to the extent of payments made or provided for during the fiscal year, (except that in the event and to the extent that, capital acquisitions, alterations or improvements are paid for out of borrowed funds, the amount paid or provided during the fiscal year for interest and amortization on mortgages or deeds of trust or loans made for such purpose shall be deducted from net cash flow in lieu of deducting the cost of such capital alterations and improvements):

(4) A reasonable reserve for budgeted tenants work and for interest and amortization on mortgages or deeds of trust and loans, real estate taxes, assessments, water charges, sewer rents, insurance, commissions and other expenses generally treated on an accrual basis.

In computing net cash flow, no deduction shall be made for depreciation or amortization as such terms are used for the purposes of the Internal Revenue Code, it being agreed that depreciation and amortization shall be allocated to each Partner in proportion to its Distribution Percentage Interest.

(d) The "commencement date", as used in subparagraph (b) of this Article for the payments, if any, provided in said subparagraph, shall mean a date ninety (90) days after receipt by the Partnership from the City of New York of a permanent Certificate of Occupancy and if such date shall be other than January 1st, then the amount of net cash flow stipulated in subparagraph (b) shall be proport-ionately reduced to cover the number of months remaining in such year. The payments, if any, stipulated in said subparagraph (b) shall be made to the partners entitled thereto forty five (45) days after the end of each calendar year.

(e) That the certificate of the Partnership's accountant or accountants specifying, under his or their hands and seals, the

- 5 -

amount of net cash flow generated in the Partnership's business during each calendar year, shall be accepted by each of the partners as conclusive evidence of the amount of the net cash flow in which the Partners shall be entitled to share as hereinbefore provided.

10.    LOSSES OF LIMITED PARTNERS.  Notwithstanding anything to the contrary contained herein, the liability of any Limited Partner for the losses of the Partnership shall in no event exceed in the aggregate the value of his contributions to the capital of the Partnership as it exists from time to time. Any losses in excess of such amount shall be borne solely by the General Partners in equal amounts, regardless of the percentage of interest.

11.    SALARIES, DRAWINGS, AND INTEREST ON CAPITAL CONTRIBUTIONS.  None of the Partners (General or Limited) shall receive any salary or drawings for services rendered on behalf of the Partnership in their capacity as Partners, nor shall any Partner receive any interest on his contribution to the capital of the Partnership, except, during the reconstruction and remodelling period ("reconstruction period") of the Property (such period shall be from August 1, 1975 to the date the Partnership receives a new permanent Certificate of Occupancy):

(i)    the Limited Partners agree, in consideration of payment by General Partners of all expenses and carrying charges for the Property from January 24, 1975 to August 1, 1975, to be charged with the first $60,000.00 of losses sustained by the Partnership in the percentage of their respective interest,

(ii)    the excess of such losses, over and above said $60,000.00, applicable to the General Partners interest, shall first be charged against the capital account of Joseph H. Gardner to the extent and in the amount of the cash drawings of Peter Weisman as provided in (iii) below, and the balance of such losses shall be charged against the capital accounts of all the Partners in the percentages provided in Article 8 hereof,

(iii)    Peter Weisman shall draw against his capital account the sum of $500.00 per week,

(iv)    General Partners shall draw from the capital of the Partnership $50,000.00 (in addition to payments made to Peter Weisman as provided in (iii) above) of approximately $125,000.00 they have heretofore expended to carry the Property and for the physical improvement thereof from a date prior to the acquisition thereof to the date hereof, leaving a net of approximately $75,000.00 due the General Partners, and

- 6 -

shall be pared equal; between the said General Partners.

12.   MANAGEMENT, DUTIES, AND RESTRICTIONS.   (a) The General Partners shall manage the Partnership business and shall devote such time to the Partnership as shall be reasonably require for its welfare and success.  The General Partners shall have the right, in their discretion, on behalf of the Partnership to borrow or lend money, to make, deliver, or accept any commercial paper an execute any mortgage, security agreement, bond, or lease, and to purchase or contract to purchase or sell or contract to sell any property for or of the Partnership, except, however, in the event (a) the first mortgage for which the General Partners now hold a Commitment from the Lincoln Savings Bank, is refinanced, or (b) a new second mortgage is placed against the Property, (the foregoing not including any of the present mortgages now liens against the Property and intended to be satisfied or assigned to a prospective lender of a building loan), or (c) the Property is sold, the Gener Partners shall first obtain, prior to the happening of any such events, the written consent of the Limited Partners, which consen the Limited Partners covenant will not be unreasonably withheld.

(b)  Subject to subparagraph (a) above, no Limited Partner shall participate in the management of the Partnership business. Except as otherwise provided in paragraph 18 hereof, no Limited Partner shall have the right to demand or receive property other than cash in return for his contribution.  Subject to paragraph 1 hereof, no Limited Partner shall have priority over any other Limited Partner either as to contributions to capital or as to compensation by way of income.

(c)  Except for the limited requirements set forth in subparag (a) of this paragraph, the Limited Partners hereby consent to any sale or other disposition, encumbrance, mortgage, security agreeme lease (or modification, cancellation, or replacement of any exist mortgage or lease) by the General Partners on behalf of the Partnership, of any or all of the Partnership's assets on such terms and conditions as may be determined by the General Partne in their sole discretion, and to the employment, when and if required, of such brokers, accountants, managing, and other age and attorneys as the General Partners may from time to time

- 7 -

determine, except that if the General Partners or an entity or management firm ("entity") which they own, shall manage the Partnership Property it is agreed that the Partnership shall pay them or the entity, as the case may be, a proportionate share of the costs and expenses that the General Partners or the entity may incur in managing all the properties under the supervision of the General Partners or the entity or both as distinguished from the usual management fee paid a real estate managing company for managing the Property. The fact that a Partner, General or Limited or a member of his family is employed by, or directly or indirectly interested in or connected with, any person, firm, or corporation employed by the Partnership to render or perform a service, or from which the Partnership may purchase any property, shall not prohibit the General Partners from employing such person, firm, or corporation, or from otherwise dealing with him or it, and neither the Partnership nor any of the Partners herein shall have any rights in or to any income or profits derived therefrom as a consequence of the Partnership relationship herein created.

(d). Any of the Partners, General or Limited, may engage in and possess an interest in other business ventures of every nature and description, independently or with others, including but not limited to the ownership, financing, leasing, operation, management or development of real property, and neither the Partnership nor of its Partners thereof shall have any rights by virtue of this agreement in and to such independent ventures or the income or profits derived therefrom.

13. BANKING. All funds of the Partnership are to be deposited in such bank account or accounts as shall be designated by the General Partners. Withdrawals from any such bank account or accounts shall be made upon such signature or signatures as th General Partners may designate.

- 8 -

14. CONVEYANCE. Any deed, bill of sale, mortgage, security agreement, lease, contract of sale, or other commitme purporting to convey or encumber the interest of the Partnership in all or any portion of any real or personal property at any held in its name, shall be signed by either of the General Partners and no other signature shall be required. No person be required to inquire into the authority to sign any document pursuant to the provisions of this paragraph. The Partnership assets or a portion thereof may be held in the name of a corpor nominee, selected by the General Partners. The General Partner however, in such event, shall notify each of the Limited Partne of the name and address of such nominee, the specific property so held, and any terms and conditions attached to such holding.

15. BOOKS OF ACCOUNT. The Partnership shall maintai full and accurate books in its principal office or such office shall be designated for such purpose by the General Partners an all partners shall have the right to inspect and examine such b at reasonable times. The books shall be closed and balanced at the end of each calendar year. Annual statements showing the Partnership profits and losses for the fiscal year and indicati the share of profit or loss of each partner for income tax purpo shall be prepared by the accountants for the Partnership and distributed to all the Partners within a reasonable time after t close of each fiscal year.

16. ASSIGNABILITY. No Limited Partner shall have the right to substitute an assignee as contributor or substituted Limited Partner in his place. Any Limited Partner may assign hi interest in the Partnership without the consent of the General Partners provided that such Limited Partner and his assignee sha execute such instruments as the General Partners may reasonably deem necessary to effectuate an assignment and shall furnish the General Partners with duplicate original copies thereof, and pay, if any, expenses that may necessarily and actually be incurred i such transfer or assignment, except that a Limited Partner named herein shall have the right to transfer his interests herein to any other Limited Partner named herein or to change their respect percentage interests among themselves without complying with the requirements provided in this paragraph, except that the Limited Partner shall, upon such occurrence, serve written notice upon th

- 9 -

General Partners and the Partnership and shall pay, if any, any expenses necessarily and actually incurred in connection with such change.

17.  POWER OF ATTORNEY.  Each of the Limited Partners hereby irrevocably constitutes and appoints the General Partners his true and lawful attorney, in his name, place and stead, to make, execute, acknowledge, and file:

(a)  A certificate of limited partnership under the laws of the State of New York;

(b)  Any certificate or other instrument which may be required to be filed by the Partnership under the laws of the State of New York or which the General Partners shall deem it advisable to file;

(c)  Any and all amendments or modifications of the instrument described in the preceding subdivisions (a) and (b); and

(d)  All documents which may be required to effectuate the dissolution and termination of the Partnership;

it being expressly understood and intended by each of the Limited Partners that the grant of the foregoing power of attorney is coupled with an interest.

18.  DEATH, RETIREMENT, BANKRUPTCY OR RECEIVERSHIP. In the event of the death, retirement, resignation, adjudication of insanity or incompetency, expulsion, bankruptcy or receivership of either of the General Partners, the Partnership shall be dissolved and terminated.

19.  DEATH OF LIMITED PARTNER.  The death of a Limited Partner shall not dissolve the Partnership nor terminate the Partnership.  In the event of such death, the personal representative of the deceased Limited Partner shall have all the rights of a Limited Partner in the Partnership to the extent of the deceased interest therein, subject to the terms and conditions of this agreement.

20.  TERMINATION PRIOR TO END OF TERM.  The Partnership may be terminated by the General Partners at their sole discretion prior to the end of the Partnership term after at least 60 days' prior written notice by the General Partners to each of the Limited Partners.

- 10 -

21.  DISTRIBUTIONS ON TERMINATION.  In the event of the dissolution or termination of the Partnership, the General Partners or the survivor shall proceed to the liquidation of the Partnership and the proceeds of such liquidation shall be applied and distributed in the following order or priority:

(a)  Payment of the debts and liabilities of the Partnership and the expenses of liquidation.

(b)  To the setting up of any reserves which the General Partners may deem necessary for any contingent or unforeseen liabilities or obligations of the Partnership.  Such reserves shall be paid over to an attorney at law of the State of New York as escrowee to be held by him for the purpose of disbursing such reserves in payment of any of the aforementioned contingencies and at the expiration of such period as the parties shall deem advisable to distribute the balance thereafter remaining as hereinafter provided.

(c)  To the repayment of any loans or advances that may have been made by any of the partners to the Partnership, but if the amount available for such repayment shall be insufficient, then pro rata on account thereof.

(d)  Any balance remaining shall then be distributed:

   (i)  Among the Limited Partners pro rata to the extent of their unreimbursed capital contribution.

   (ii) To the General Partners to the extent of their unreimbursed capital contribution.

   (iii) Among all the partners, General and Limited, in proportions set forth in paragraph 9 hereof, to the extent they would otherwise share in the profits and losses of the Partnership.

In lieu of sale, the Partnership assets may be distributed in kind, each partner accepting an undivided interest in the partnership's assets subject to its liabilities in satisfaction of his interest in the Partnership.

- 11 -

22.   LIQUIDATION.  A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities to creditors so as to enable the General Partners to minimize the normal losses attendant upon a liquidation.  Each of the partners shall be furnished with a statement prepared by the Partnership's then Certified Public Accountants, which shall set forth the assets and liabilities of the Partnership as at the date of complete liquidation.  Upon the General Partners' complying with the distribution plan set forth in Paragraph 21 hereof (including payment over to the Attorney-Escrowee if there are sufficient funds therefor), the Limited Partners shall cease to be such, and the General Partners, as the sole remaining partners of the Partnership, shall execute, acknowledge, and cause to be filed a Certificate of Cancellation of the Partnership.

23.   PERSONAL LIABILITY.  Except as provided in paragraph 9(e) hereof, the General Partners shall not be personally liable for the return of the capital contributions thereof, it being expressly understood that any such return shall be made solely from the partnership assets as herein provided.

24.   LIABILITY FOR FAILURE TO ACT.  The doing of any ac or failure to do any act by the General Partners, the effect of which may cause or result in loss or damage to the Partnership, if pursuant to opinion of legal counsel employed by the General Partners on behalf of the Partnership, shall not subject the General Partners to any liability.

25.   INDEMNIFICATION.  The Partnership shall indemnify and save harmless the General Partners from any loss or damage incurred by them by reason of any act performed by them for and c behalf of the Partnership and in furtherance of its interests. Th foregoing shall not relieve the General Partners of liability for gross negligence or willful malfeasance.

- 12 -

26.  NOTICES.  All notices provided for in this agreement shall be directed to the parties at the addresses here set forth and to the Partnership at its principal office by Registered or Certified Mail.

27.  BINDING EFFECT.  This agreement shall be binding upon all the parties and their estates, heirs, legatees and successors and assigns.

28.  EXECUTION.  This agreement may be executed in several counterparts and all so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or the sam counterpart.

29.  APPLICABLE LAW.  This agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above written.

GENERAL PARTNERS:

_____
Peter Wiseman

_____
Joseph A. Gardner

LIMITED PARTNERS:

_____
Alan Ades

_____
Albert Erani

_____
Dennis Erani

- 13 -

STATE OF NEW YORK )
               : ss.:
COUNTY OF NEW YORK)

      On the 21 day of August, 1975, before me
personally came PETER WEISMAN to me known to be the individual
described in and who executed the foregoing instrument, and
acknowledged that he executed the same.

ALAN SHAPIRO
NOTARY PUBLIC, State of New York
No. 30-11100
Qualified in Westchester County,
Term Expires March 30, 1977

_____
               Notary Public


STATE OF NEW YORK )
               : ss.:
COUNTY OF NEW YORK)

      On the 21 day of August, 1975, before me
personally came JOSEPH H. GARDNER to me known to be the
individual described in and who executed the foregoing instrument
and acknowledged that he executed the same.

ALAN SHAPIRO
Notary Public, State of New York

_____
               Notary Public


STATE OF NEW YORK )
               : ss.:
COUNTY OF NEW YORK)

      On the 21 day of August, 1975, before me
personally came ALAN ADES to me known to be the individual
described in and who executed the foregoing instrument, and
acknowledged that he executed the same.

_____
               Notary Public


STATE OF NEW YORK )
               : ss.:
COUNTY OF NEW YORK)

      On the 21 day of August, 1975, before me
personally came ALBERT ERANI to me known to be the individual
described in and who executed the foregoing instrument, and
acknowledged that he executed the same.

_____
               Notary Public


STATE OF NEW YORK )
               : ss.:
COUNTY OF NEW YORK)

      On the 21 day of August , 1975, before me
personally came DENNIS ERANI to me known to be the individual
described in and who executed the foregoing instrument, and
acknowledged that he executed the same.

_____
               Notary Public

ALL that certain lot, piece or parcel of land, situate, lying
and being in the Borough of Manhattan, City and County of
New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the
easterly side of Seventh Avenue with the southerly side of
16th Street; running

thence easterly along said southerly side of 16th Street
150 feet;

thence southerly parallel with Seventh Avenue 103 feet 3
inches to the center line of the block between 15th and 16th
Streets;

thence westerly along said center line of the block and
parallel with 16th Street 50 feet;

thence northerly parallel with Seventh Avenue 25 feet 9-3/4
inches;

thence westerly parallel with 16th Street 100 feet to the
easterly side of Seventh Avenue;

and thence northerly along the easterly side of Seventh Avenue
77 feet 5-1/4 inches to the corner aforesaid, the point or
place of Beginning.

EXHIBIT "A"

RIDER TO AGREEMENT OF PARTNERSHIP
MADE THIS *31st* DAY OF AUGUST, 1975,
AMONG PETER WEISMAN AND JOSEPH H.
GARDNER, AS GENERAL PARTNERS, AND
ALAN ADES, ALBERT ERANI AND DENNIS
ERANI, AS LIMITED PARTNERS

1. The clauses contained in this Rider shall
supersede any inconsistent provisions elsewhere in the
Agreement of Partnership contained.

2. Section 4(b) and Article 18 of the Agreement
are hereby deleted, *and* The words "retirement, resignation"
are hereby deleted from Section 4(c) and Article 18 of
the Agreement, *except in the event of the prior written consent of a*
*majority of the Limited Partners.*

3. The entire first $18,000 of the net cash
flow referred to in Subsection 9(b)(i) is to be dis-
tributed to the limited partners.

4. The partnership's accountants shall be
Gardner, Waschler, Freeman & Co. No change shall be
made in the partnership's accountants without the consent
of a majority of the limited partners.

5. The general partners represent and warrant
as follows:

(a) The property is to be renovated
as a building with 69 apartments and approximately 3,400
square feet of commercial space on the ground floor, a
commercial basement area, and is to be a six-story elevator
building.

(b) The property qualifies for tax
exemption pursuant to Section 421 of the Real Property
Tax Law. Annexed hereto as Exhibit B is a true and accurate

copy of a certificate from the Department of Development
of the City of New York, Housing and Development Administra-
tion, which certificate is in full force and effect.

(c)  Annexed hereto as Exhibit C is a
true, correct and complete copy of a letter dated
August 6, 1975 from Chemical Bank to P & J Realty Co.,
which letter contains a building loan commitment.  The
commitment as set forth in said letter remains unmodified
and in full force and effect.

(d)  The general partners agree to indemnify
the limited partners of and from all losses, costs and
damages arising out of (i) the failure to obtain a building
loan mortgage on the property in accordance with the
commitment from Chemical Bank, (ii) the failure to
comply with the terms of such a building loan mortgage
from Chemical Bank including, without limitation, the
failure to obtain a permanent Certificate of Occupancy
with respect to the property on or before March 15, 1976,
and (iii) the failure to close the permanent mortgage
financing for the property with The Lincoln Savings Bank
in accordance with a letter from said Bank dated May 20,
1975, as amended on June 9, 1975.

(e)  ~~The personal statements of net worth~~
of Peter Weisman and Joseph H. Gardner ~~respectively dated~~ have a net worth
sufficient so that the partnership will constitute a
~~May 1, 1975 are true, complete and accurate and the~~
limited partnership for legal and tax purposes.
~~general partners agree that the limited partners~~
~~are entering into this agreement in reliance upon such~~
~~personal statements of net worth.~~

-2-

6. The general partners shall not, without the prior written consent of a majority of the limited partners:

(a) Borrow money on behalf of the partnership, except from Chemical Bank and The Lincoln Savings Bank in accordance with the mortgages above referred to *and except for short term borrowings for the purposes of the partnership.*

(b) Place any mortgage on the property, except to Chemical Bank and The Lincoln Savings Bank as set forth above nor prepay in whole or in part, refinance or otherwise modify any mortgage.

(c) Enter into any ground lease covering the property or any space lease covering more than 25% of the property.

(d) Enter into any transaction other than in the ordinary course of business.

7. Notwithstanding Section 12(c) of the agreement, the maximum management fee paid to any entity owned by the general partners shall not exceed 6% of the rent roll for the property.

8. In the sixth line from the bottom of Section 12(c), the word "personal" shall be inserted before the word "property".

9. Withdrawals from any bank account referred to in Article 13 of the agreement shall require the signature of not less than one of the general partners.

10. It is the intent of the parties to this agreement that distributions of net cash flow pursuant to Article 9 hereof shall be made not less frequently than quarterly.

-3-

11.  In the event of any dispute between the parties hereto arising under or relating to this agreement, such dispute shall be resolved by arbitration in New York City in accordance with the rules then obtaining of the American Arbitration Association.

12.  No general partner shall assign his interest in the partnership except to the extent of an assignment by operation of law and except with the prior written consent of a majority of the limited partners

13. In the event that there is a cash surplus after construction ~~has been completed~~ and initial renting of the property has been substantially completed, 70% of such cash surplus shall be refunded to the limited partners until their investment has been repaid.

-4-

EXHIBIT 15

**The City of New York**
**Housing and Development Administration**
**Department of Development**
Partial Tax Exemption Unit
100 Gold Street/Room-9138
New York, New York 10038

\*\*\*PRELIMINARY CERTIFICATION OF ELIGIBILITY\*\*\*

PREMISES:  91 Seventh Avenue

New York, New York

OWNER:  P & J Realty Co./Peter Weisman & Joseph Gardner

100 West 15th Street, New York, N.Y. 10010

DATE EXCAVATION COMMENCED:  December 24, 1974

DATE ISSUED:  April 28, 1975

DOCKET NUMBER:  TE00259

BLOCK:  791   LOT(S):  78

Based upon the information contained in the Preliminary Application for Partial Tax Exemption dated  December 24, 1974 and a determination by the Administrator, the applicant, pursuant to Section 421 of the Real Property Tax Law and the Regulations of the Housing and Development Administration issued pursuant thereto, is hereby granted this Preliminary Certification of Eligibility for Partial Tax Exemption for the above premises, except as to those portions of the new building, if any, which are non-residential or hotel parts of a mixed building.

This Certification is conditioned upon the filing and approval of a final application to be submitted to the Housing and Development Administration not less than 60 days prior to initial occupancy and the submission of the temporary or permanent Certificate of Occupancy issued by the Department of Buildings as evidence of the fact that the structure was completed by December 31, 1976. This Certification must be filed with the New York City Tax Commission between the next February 1st and March 15th.

ROGER STARR, Administrator
Commissioner/Department of Development

Deputy Commissioner
Department of Development

**CHEMICAL** Realty Corporation
Subsidiary of Chemical New York Corporation

277 Park Avenue, New York, NY 10017
Tel: (212) 922-6168

Paul E. Culley, II
Assistant Vice President

August 6, 1975

P & J Realty Co.
100 West 15th Street
New York, New York 10011

Re:  91 West 7th Avenue Project

Gentlemen:

Chemical Bank (Lender) is pleased to inform you that its
Credit Committee has approved your request for a construction
loan (the Loan) in the amount of $1,200,000 to be made to you
(or to a corporation designated by you and approved by Lender)
(Borrower).  The Loan is to be evidenced by a note (the Note)
of Borrower and is to be secured by a first mortgage (the Mort-
gage) on the Borrower's fee title interest in a parcel of land
containing approximately 12,913 sq.ft., located at the south-
eastern corner of the intersection of W. 16th St. and Seventh
Avenue in Manhattan, New York (the Premises), and the improve-
ments thereon consisting of a six-story plus basement brick
factory-loft building which is to be renovated into a six-
story plus basement multi-use building containing 69 apartments
and two commercial areas (the Improvements) (The Premises and
Improvements hereinafter referred to collectively as the Real
Property).  The Loan is to be advanced pursuant to a Building
Loan Agreement to be made between Lender and Borrower (the
Building Loan Agreement)..

Renovation of the Improvements has commenced and completion
(as determined by the Lender's supervising engineer) shall be
required by January 31, 1976.  It shall be further required
that a permanent Certificate of Occupancy be obtained by March
15, 1976.  The Loan shall mature approximately nine months from
the date of closing, but in no event later than 30 days prior
to the expiration of the Permanent Loan Commitment hereinafter
referred to.  Interest shall be payable monthly, on the first

Page two

day of each month, calculated on the outstanding balance of the Loan at a rate equal to 3% per annum plus Chemical Bank's prime rate in effect from time to time.  Adjustments in the interest rate shall be effective as of the date on which a change in Chemical Bank's prime rate occurs.  Said interest shall be computed for the actual number of days which have elapsed from the date of each advance calculated on the basis of a 360-day year.

Lender's obligation to make the Loan is subject to the terms and conditions contained in this letter and in Exhibit A attached hereto and made a part hereof, and to the receipt and approval by Lender of:

1) joint and several guarantees of Joseph Gardner, Peter Weisman, and their respective spouses of:
    a) payment of the Note
    b) completion of the Borrower's obligations under the Building Loan Agreement,

2) joint and several indemnification against losses to Lender resulting from the sale of the Note and Mortgage after:
    a) default
    b) loss of the Permanent Loan Commitment hereinafter referred to,

    the indemnification shall be executed by Joseph Gardner, Peter Weisman, and their respective spouses,

3) the commitment for permanent financing of the Real Property executed by The Lincoln Savings Bank and accepted by Borrower dated May 20, 1975, and as amended June 9, 1975, (The Permanent Loan Commitment), together with a satisfactory Buy-Sell Agreement executed by the Borrower, Lender, and The Lincoln Savings Bank.

If the foregoing is satisfactory to you, kindly indicate your acceptance thereof and your agreement to borrow the proceeds of the Loan from the Lender upon the terms and conditions contained herein and in the exhibits hereto, by signing and returning the enclosed copy of this letter together with Exhibit A, which together constitute the Commitment, to Lender at the address indica-

August 6, 1975
Page three

ted above within 15 days from the date hereof, otherwise
the commitment will, at the option of Lender, be nugatory.

Very truly yours,

CHEMICAL BANK

By

Paul E. Culley, II
Assistant Vice President of
Chemical Realty Corporation
Attorney-in-Fact.

PEC/bc

Enc.

Agreed and Accepted this
_____IV_____ day of August, 1975:

P & J REALTY CO.

By _____
    (authorized signature)

Name: _JOSEPH H. JARDIM_
       (please print)

Title: _PARTNER_
        (please print)

# EXHIBIT B

**ROSE & KISSIN** LLP

757 THIRD AVENUE
19ᵀᴴ FLOOR
NEW YORK, NY 10017
TEL: (212) 973-9100
FAX: (212) 973-9101
—
Lawrence G. Rose
(212) 973-9750
lrose@rosekissin.com

May 29, 2006

Mark D. LeBow, Esq.
Sokolow Carreras LLP
770 Lexington Avenue
New York, NY 10021

Steven Simkin, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

*Estate of Joseph H. Gardner & Related Entities*

Dear Mark and Steve:

Further to our conversation, to try to resolve the issues of continuing the 5 entities (West 56th Street Associates LP, 14-15 St. Associates L.P., 160 Associates L.P., East 22nd Street Associates L.P. and West 15th Street Associates L.P.) and confirming the Trust as Joe's successor General Partner in those entities, Peter Weisman, on behalf of the Weisman family interests in these entities, and Danielle Gardner, on behalf of the Gardner family interests in these entities, has agreed as follows:

MODIFIED RIGHT OF FIRST REFUSAL: At any time after 30 days after the date hereof, either GP in each of the entities (the "offering party") will have the right to market and sell (subject to the following right of first refusal) any of the 5 properties owned by the respective entities for sale (including, without limitation, to a condominium converter). Each property would be offered as a whole. Partial interests could not be offered. Upon receipt of a bona fide, third-party written offer to purchase a property that the offering party is prepared to accept, the written offer and all pertinent details would be presented to the other GP. That other GP would then have 20 days to either agree to the sale to the third-party (in which event the property would be sold in accordance with the terms of the offer), or to purchase the offering party's interest and all related or affiliated limited partnership interests of the offering party (collectively, the "selling parties") at a price that is equivalent to the amount the selling parties would have received had the property been sold to the third party upon the terms of the offer.

{00025411}

2

Please discuss the foregoing with your respective clients, and, if each agrees with the foregoing, please acknowledge and consent by signing below, and return signed copies to me by facsimile, whereupon I will circulate fully executed counterparts to each of you.

By executing this letter, each of you represent that you are authorized to execute this letter on behalf of your respective clients. Furthermore, Mark, by executing this letter, you represent that Peter has signed the General Partner Consents that were forwarded to him last week, continuing the five entities listed above and confirming the appointment of the Trust as Joe's successor General Partner, and that he deems them to be binding and effective.

Promptly after execution and delivery of this letter, the parties shall enter into formal agreements confirming the foregoing agreements, but this letter shall be considered binding upon all of the interested parties in accordance with its terms.

This letter may be executed in counterparts, each of which, when taken together shall constitute but one instrument. Facsimile and/or e-mail signatures shall be considered binding upon the parties so signing.

Sincerely yours,

Lawrence Rose

AGREED

Mark LeBow, on behalf of Peter Weisman and the Weisman Family Group

AGREED

Steven Simkin, on behalf of Danielle Gardner and on behalf of the Gardner Family Group, the Estate and the Trust

{00025411}

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION
-------------------------------------------------------------- X
In the Arbitration Concerning
160 Associates L.P. Between:                            :

Charlotte Gardner and Danielle Gardner,                :
Individually, and as Trustees of the
Article SIXTH Trust created by the                     :
Last Will and Testament of Joseph H. Gardner
                                                       :        Arbitration No._____
                        Claimants,
                                                       :

        - against -
                                                       :
PETER WEISMAN,
                                                       :
                        Respondent.
-------------------------------------------------------------- X

## DEMAND FOR ARBITRATION
## AND STATEMENT OF CLAIM

PLEASE TAKE NOTICE THAT unless, within twenty days after service of this Demand for Arbitration and Statement of Claim, you apply to stay the arbitration herein pursuant to Article 75 of the Civil Practice Law and Rules, you will thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

The Claimants are the trustees of a trust, created by the Last Will and Testament of Joseph H Gardner (the "Trust"). Joseph Gardner died on March 1, 2006. Danielle Gardner and Charlotte Gardner, individually, are also the owners of limited partnership interests in 160 Associates L.P. Claimants hereby demand arbitration pursuant to the arbitration provision of the 160 Associates L.P. Partnership Agreement, executed in 1975 (the "Agreement"), which is incorporated by reference herein. (A true copy of the arbitration provision is attached hereto as Exhibit A.)

### Preliminary Statement

1.    This action arises out of the breaches of contract and fiduciary duty by the Respondent Peter Weisman ("Weisman"). For many years, Weisman and Joseph H. Gardner conducted business together as co-general partners in many successful real estate partnerships, including 160 Associates L.P. ("160 Associates" or the "Partnership").

2.    160 Associates is the owner of valuable real property located at 156-60 West 16th Street, also known as 91-97 Seventh Avenue in Manhattan (the "Property"), which, for many years, provided to Peter Weisman and Joseph Gardner a stream of income.

3.    Since Joseph Gardner's death on March 1, 2006, Weisman has wrongfully attempted to seize control of the Partnership and unilaterally sell the Property over the objection of the Gardner family, in violation of the Agreement and his fiduciary duties as a partner.

### Background

4.    In 1975, Peter Weisman and Joseph Gardner entered into an Agreement of Limited Partnership, whereby each became a co-general partner in an entity which had acquired the Property on January 24, 1975. As stated in the Agreement, the purpose of their partnership was, inter alia, "to remodel, reconstruct, own, manage, mortgage, create security interests in, lease, improve, exchange, sell or otherwise transfer or dispose of the property."

5.    Under Section 12 of the Agreement, the General Partners (defined in the Agreement as Peter Weisman and Joseph Gardner), together, have exclusive authority to manage and control the Partnership. Section 12 provides that "[t]he General Partners shall manage the Partnership business …"

#603193 v5 \18955 \001

2

6.    Until Joseph Gardner's death on March 1, 2006, the general partners had a successful working relationship to run the Partnership's business. Joseph Gardner handled all of the Partnership's business, including the daily management and operation of the Property and the Partnership. He managed all of the properties and real estate partnerships held by the two partners, through P&J Realty Management, LLC ("P&J Realty"), and out of P&J Realty's offices in New York City from the inception of the Partnership until the time of his death. For more than the past ten years, Weisman has lived and worked in South Carolina.

7.    Joseph Gardner's Last Will and Testament designated that his general partnership interest in 160 Associates would pass to a Trust, (the income from which would support his surviving wife, Charlotte) and upon his wife's death, to his daughter, Danielle Gardner, as it was his intention and desire that his family business would remain viable and continue to support his family, with his daughter, Danielle, essentially replacing him.[1]

8.    An amendment to the Agreement, dated August 25, 2004 (the "Amendment"), provides as follows:

> 4.    The term of the partnership shall be from the date hereof to December 31, 2028, providing however, that the partnership shall be dissolved prior to such date upon:...(c) the death or withdrawal event (as defined in the New York Revised Limited Partnership Act) of any General Partner unless, within 90 days after such withdrawal event, the remaining General Partners, if any, and a majority in interest of the Limited Partners agree in writing to continue the business of the partnership and to the appointment of one or more additional or substitute general partners, if necessary or desired.

---

[1]    A proceeding for construction of the Will was commenced in the Surrogate's Court of the State of New York, New York County, on July 14, 2006.

#603193 v5 \18955 \001

3

9. Since the death of Joseph H. Gardner on March 1, 2006, Peter Weisman has acted in derogation of the Agreement and the Amendment by, among other things, wrongfully attempting to seize control of the Partnership, and to offer the Property either for sale or as a possible condominium conversion, without consulting with the Trust or receiving its approval.

10. In a letter dated "May __, 2006," received by Claimants on May 11, 2006, Weisman unilaterally decreed, "I shall not elect to dissolve the partnerships but shall continue to act as sole General Partner ..."

11. Subsequently, Weisman consented to the substitution of the Trust as a substitute general partner.[2] However, despite such consent, he has continued to act as if he is the sole general partner.

## The Partnership Operates Through P&J Realty

12. Upon information and belief, the Partnership, long before the death of Joseph Gardner, appointed P&J Realty to act as its agent for purposes of managing and operating the Partnership and the Property.

13. Section 5(b) of the Operating Agreement of P&J Realty Management, LLC (the "P&J Agreement") provides, in relevant part, as follows with respect to the authority to manage the business and affairs of P&J Realty:

> b. The Managers shall have exclusive authority to manage and control the business and affairs of the Company although any manager may participate in ministerial and other non-management activities of the Company. Pursuant to the foregoing, the Managers shall have all of the rights and powers as Managers

---

[2] The partnership interests of Weisman and the partnership interests of the heirs of Joseph H. Gardner, together, comprise a majority of the ownerships interests in the Partnership.

#603193 v5 \18955 \001

4

provided by law subject only to such restrictions contained in this Agreement. Any actions taken by the Managers shall constitute the act of, and serve to bind, the Company. In dealing with the Managers acting on behalf of the Company, no person shall be required to inquire into the authority of such Manager to bind the Company. <u>All decisions of the Managers shall be unanimous</u>, although following a decision by the Managers, any one Manager can effectuate such decision (by signing of documents, etc.).

(Emphasis supplied.)

14.    Pursuant to the terms of the P&J Agreement, there are to be two Managers of P&J Realty. The original Managers were Joseph Gardner and Weisman. Upon the death of Joseph Gardner, and pursuant to the terms of the P&J Agreement, Danielle Gardner was designated to act as his successor Manager.

15.    As a matter of practice, all of the partnerships and properties held by Joseph Gardner and Weisman have always been managed and operated through P&J Realty out of P&J Realty's offices. Indeed, the Partnership's business has been operated out of a master bank account in the name of P&J Realty and work necessary to run the business has been performed by P&J employees.

16.    To the extent that Agreement is not clear with respect to how the Partnership was to operate, which it is, the panel must look to the terms of the P&J Realty Agreement as all of the Partnership's business was conducted through P&J Realty. The P&J Realty Agreement makes it clear that no decision may be made without the consent of both Managers; namely, at the present time, Weisman and Danielle Gardner.

### Peter Weisman's Wrongful Acts

17.    Without consulting with the Trust, which shares equal managerial authority and power with Weisman under the Agreement, or with Danielle Gardner, the Co-

#603193 v5 \18955 \001

5

Manager of P&J Realty, Weisman has undertaken to sell the Property. The Property is the principal asset of the Partnership and its sale will mean the end of the Partnership as a viable, income producing entity.

18.    Claimants have learned that Weisman has engaged a valuation firm, which has provided him with a valuation of the Property in the amount of $37 million.

19.    Claimants have also learned that Weisman has taken steps to acquire air rights from the Metropolitan Transportation Authority, the owners of a generator plant located next to the Property, and that Weisman intends to sell the Property, along with the air rights, to the developer of a high rise condominium.

20.    Claimants have further learned that Weisman has already spoken to an attorney about the possibility of converting the Property to a condominium.

21.    The actions described above in paragraphs 17 through 20 have been undertaken over the objection of Claimants, which objection has been disregarded.

22.    The actions described above in paragraphs 17 through 20 constitute violations of the Agreement and violations of Weisman's fiduciary duties.

23.    Weisman's attempt to sell the Property without consulting with the Trustees of the Trust, and over their objection, violates Section 12 of the Agreement, which vests each general partner with equal management powers. His conduct also violates Section 5(b) of the P&J Realty Agreement.

24.    Weisman's attempt to sell the Property violates his fiduciary duty to his partners, as the Property is the principal asset of the Partnership and its sale will mean the end of the Partnership as a viable, income producing entity.

#603193 v5 \18955 \001

## The Invalid Right of First Refusal Agreement

25.    By letter dated May 29, 2006, Weisman and the Trust agreed that either general partner would have the right to market and sell the Property owned by the Partnership as long as the other general partner would have a right of first refusal with respect to such sale in that the non-selling general partner could agree to purchase the selling general partner's interest, and all related or limited partnership interests of the selling general partner, at a price equivalent to the amount that the selling general partner would have received had the property been sold to the third party upon the terms of any offer from a third party that the selling general partner was willing to accept.

26.    Such agreement contemplated that the Partnership would continue to own and operate the Property if such right of first refusal was ever exercised.

27.    The validity of the agreement concerning such right of first refusal has been challenged on the basis that the limited partners affected by it did not agree to this right of first refusal.  Paragraph 12(c) of the Agreement requires the general partners to obtain the consent of the limited partners if the Property is to be sold.  The New York Revised Limited Partnership Act also speaks to the validity of such agreement as it affects the rights of the limited partners and was not agreed to, or consented to, by them.  Weisman however, continues to rely on the purported validity of the agreement.  Accordingly, a declaration from the panel as to its validity is required to resolve this controversy.

## Dispute Resolution Under the Agreement

28.    Section 11 of the Agreement provides that:

In the event of any dispute between the parties hereto arising under or relating to this agreement, such dispute shall be resolved by

#603193 v5 \18955 \001

7

arbitration in New York City in accordance with the rules then obtaining of the American Arbitration Association.

29.    Accordingly, in light of the dispute described above, Weisman must submit to the jurisdiction of this panel.

## The Claims

30.    As set forth above, Weisman has:

     (a)    acted in contravention of the terms of the Agreement, thereby breaching it; and

     (b)    violated his fiduciary duties; and

     (c)    violated the partnership laws of the State of New York.

31.    Claimants are entitled to the following relief based upon the allegations set forth herein:

     (a)    a permanent injunction, enjoining Weisman from violating the Agreement by, among other things, acting unilaterally to sell, or offer for sale, the assets of the Partnership;

     (b)    a declaratory judgment concerning the validity of the right of first refusal agreement set forth in the May 29, 2006 letter and referred to above in paragraphs 25 through 27; and

     (c)    reimbursement of attorneys' fees, costs and expenses incurred in this arbitration, in accordance with the terms of the Agreement.

Claimants also reserve the right to amend this pleading and Claimant's request for relief after review of documents to be produced and other appropriate discovery of the facts.

Claimants request such other and further relief as the panel deems equitable and just.

Dated: New York, New York
      July 17, 2006

MORRISON COHEN LLP

By: _____

         Y. David Scharf
         Jay R. Speyer
         Daniel Branower

909 Third Avenue
New York, New York 10022
(212) 735-8600
Attorneys for Claimants

#603193 v5 \18955 \001

9

**AMERICAN ARBITRATION ASSOCIATION**

-------------------------------------------------------------x

In the Arbitration Concerning
160 Associates L.P. Between

                        :         Arbitration No._____

Charlotte Gardner and Danielle Gardner,
Individually, and as Trustees of the
Article SIXTH Trust created by the
Last Will and Testament of Joseph H. Gardner   :         **AFFIDAVIT OF SERVICE**

                    Claimants,

     -against-

PETER WEISMAN,

                  Respondent.

-------------------------------------------------------------x

STATE OF NEW YORK     )
                       ) ss.:
COUNTY OF NEW YORK   )

       The undersigned being duly sworn, deposes and says:

       1.      Deponent is not a party to the action, is over 18 years of age and resides in Westbury, New York.

       2.      On the 17th day of July, 2006, deponent served a copy of the DEMAND FOR ARBITRATION AND STATEMENT OF CLAIM upon:

       Peter Weisman
       110 S. Summer Street
       Edgartown, MA 02539

by depositing a true copy of same enclosed in a properly addressed wrapper, in the custody of Federal Express, an overnight delivery service, prior to the latest time designated by Federal Express for overnight delivery.

                                          _____
                                            Gina L. Crews

Sworn to before me this
17th day of July, 2006.

_Christine Cordero_
Notary Public

#590128 v1 \17481\006

CHRISTINE CORDERO
Notary Public, State of New York
No. 01CO4613788
Qualified in Westchester County
Commission Expires Aug. 31, 2009

# EXHIBIT A

11.  In the event of any dispute between the parties hereto arising under or relating to this agreement, such dispute shall be resolved by arbitration in New York City in accordance with the rules then obtaining of the American Arbitration Association.

12.  No general partner shall assign his interest in the partnership except to the extent of an assignment by operation of law and except with the prior written consent of a majority of the limited partners

13. In the event that there is a cash surplus after construction ~~has been completed~~ and initial renting of the property has been substantially completed, 70% of such cash surplus shall be refunded to the Limited Partners until their investment has been repaid.

-4-

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
```

CHARLOTTE GARDNER and                         :
DANIELLE B. GARDNER, as Co-Executors,         :
and as Trustees of the Article SIXTH Trust    :      06 CV 5998
Created by the Last Will and Testament of     :
JOSEPH H. GARDNER,                            :
                                              :
                          Petitioners,        :      **NOTICE OF PENDENCY**
                                              :
             -against-                        :
                                              :
PETER WEISMAN,                                :
                                              :
                          Respondent.         :
```
------------------------------------------------- x
```

OFFICE COPY

     NOTICE IS HEREBY GIVEN that an action has been commenced and is now pending in this Court upon the petition of the Petitioners against Respondent based on claims of breach of contract, breach of fiduciary duty and a declaratory judgment in which the judgment demanded will affect the title, or the possession, use or enjoyment of the properties listed herein in that the validity of the exercise of a right of first that has been extended to the Article SIXTH Trust established by the Last Will and Testament of Joseph H. Gardner is at issue. If title is transferred before the validity of the exercise of the right of first refusal can be determined, Petitioners' rights will be abrogated and its interests in the real property listed herein will be harmed.

     NOTICE IS FURTHER GIVEN that the premises affected by this action are located at 152-160 West 16th Street, New York, New York, otherwise known as 91 Seventh Avenue, situate, respectively, in Block 791, Lot 78 in the County of New York in the State of New York, as described in Schedule "A" attached hereto and made a part hereof.

8706145 v1 \18955 \001

The Clerk of the County of New York is hereby directed to index this Notice against Respondent Peter Weisman.

Dated: New York, New York
      March 26, 2007

MORRISON COHEN LLP

By: _____
            K. David Scharf
           David A. Piedra
           Jay R. Speyer

909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Petitioners*

Schedule A

## DESCRIPTION OF PREMISES

### Title No. 819556

ALL THAT CERTAIN plot piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of Seventh Avenue with the southerly side of 16th Street;

RUNNING THENCE easterly along said southerly side of 16th Street, 150 feet;

THENCE parallel with Seventh Avenue, 103 feet 3 inches to the center line of the block between 15th and 16th Street;

THENCE westerly along said center line of the block and parallel with 16th Street 50 feet;

THENCE northerly parallel with Seventh Avenue, 25 feet 9 3/4 inches;

THENCE westerly parallel with 16th Street, 100 feet to the easterly side of Seventh Avenue; and

THENCE northerly along the easterly side of Seventh Avenue, 77 feet 5 1/4 inches to the corner aforesaid the point or place of BEGINNING.

(to be attached separately and to include tax map designation)

# EXHIBIT E

AMERICAN ARBITRATION ASSOCIATION

------------------------------------------------------------- X

In the Arbitration Concerning
160 Associates L.P. Between:                                 :

Charlotte Gardner and Danielle Gardner,                      :
Individually, and as Trustees of the
Article SIXTH Trust created by the                           :
Last Will and Testament of Joseph H. Gardner

                                                             :        Arbitration No.  13 101 01642 06

                                 Claimants,

                                                             :

     - against -

                                                             :

PETER WEISMAN,

                                                             :

                                 Respondent.

------------------------------------------------------------- X

## SECOND AMENDED STATEMENT OF CLAIM

Claimants Charlotte and Danielle Gardner are the trustees of a trust created by the

Last Will and Testament of Joseph H Gardner (the "Trust").  Joseph Gardner died on March 1,

2006.  Danielle Gardner and Charlotte Gardner, individually, are also the owners of limited

partnership interests in 160 Associates L.P.  On or about July 17, 2006, Claimants demanded

arbitration pursuant to the arbitration provision of the 160 Associates L.P. Partnership

Agreement, executed in 1975 (the "Agreement"), which Agreement is incorporated by reference.

### Preliminary Statement

1.      This action arises out of the breaches of contract and fiduciary duty by the

Respondent Peter Weisman ("Weisman").  For many years, Weisman and Joseph H. Gardner

conducted business together as co-general partners in many successful real estate partnerships,

including 160 Associates L.P. ("160 Associates" or the "Partnership").

2.      160 Associates is the owner of valuable real property located at 156-60

West 16th Street, also known as 91-97 Seventh Avenue in Manhattan (the "Property").  For

many years, Peter Weisman and Joseph Gardner, as well as the limited partners in 160

Associates, have earned a significant stream of income from the Property.[1]  The Property is the

principal asset of the Partnership.

        3.      Since Joseph Gardner's death on March 1, 2006, Weisman has wrongfully

attempted to seize control of the Partnership and has taken actions and made decisions on behalf

of the Partnership without consulting the Gardner family, or over their objection, in violation of

the Agreement and his fiduciary duties as a partner.

        4.      Weisman has also failed to recognize Claimants' proper exercise of a right

of first refusal in connection with a proposed sale of the Property.

## Background

        5.      In 1975, Peter Weisman and Joseph Gardner entered into the Agreement

whereby each became a co-general partner in an entity which had acquired the Property on

January 24, 1975.  As stated in the Agreement, the purpose of their partnership was, inter alia,

"to remodel, reconstruct, own, manage, mortgage, create security interests in, lease, improve,

exchange, sell or otherwise transfer or dispose of the property."

        6.      Under Section 12 of the Agreement, the General Partners (defined in the

Agreement as Peter Weisman and Joseph Gardner), together, have exclusive authority to manage

and control the Partnership.  Section 12 provides that "[t]he General Partners shall manage the

Partnership business …"

        7.      Until Joseph Gardner's death on March 1, 2006, Joseph Gardner and

Weisman had been joint General Partners or Managing Members in numerous real estate

---

[1]      The partnership interests of Weisman and the partnership interests of the heirs of Joseph H. Gardner
(including the Trust), together, comprise a majority of the ownerships interests in the Partnership.

#713201 v1 \18955 \001

2

ventures for approximately 38 years. All of the various ventures in the Gardner/Weisman real estate portfolio were managed and operated under the auspices of P&J Realty Management, LLC ("P&J Realty"), in which both Joseph Gardner and Weisman were Managing Members. Although the two were partners, Joseph Gardner handled all of the daily management and operation of the various ventures and the properties owned by them, including 160 Associates, through P&J Realty, and out of P&J Realty's offices in New York City, from the inception of the Partnership until the time of his death.

8.     For approximately ten years before Joseph Gardner's death, Weisman lived and worked in South Carolina while Joseph Gardner was in charge of the leasing, accounting, financial management (including distributions and cash flow) and refinancing issues concerning the various businesses, including the Partnership, while Weisman was involved, to the extent such issues arose, in the construction aspects of the business.

9.     Joseph Gardner's Last Will and Testament designated that his general partnership interest in 160 Associates would pass to a Trust, (the income from which would support his surviving wife, Charlotte) and upon his wife's death, to his daughter, Danielle Gardner, as it was his intention and desire that his family business would remain viable and continue to support his family, with his daughter, Danielle, essentially replacing him.

10.     An amendment to the Agreement, dated August 25, 2004 (the "Amendment"), provides as follows:

> 4.     The term of the partnership shall be from the date hereof to December 31, 2028, providing however, that the partnership shall be dissolved prior to such date upon: ... (c) the death or withdrawal event (as defined in the New York Revised Limited Partnership Act) of any General Partner unless, within 90 days after such withdrawal event, the remaining General Partners, if

#713201 v1 \18955 \001

3

any, and a majority in interest of the Limited Partners agree in writing to continue the business of the partnership and to the appointment of one or more additional or substitute general partners, if necessary or desired.

11.     In a letter dated "May __, 2006," received by Claimants on May 11, 2006, Weisman unilaterally decreed, "I shall not elect to dissolve the partnerships but shall continue to act as sole General Partner ..." After the Trust informed Weisman that he was not permitted to so under the Agreement, Weisman consented to the substitution of the Trust as a substitute general partner.

12.     Thereafter, on or about May 29, 2006, the parties entered into a right of first refusal agreement concerning five of their real estate partnerships, including the Partnership (the "May 29 Agreement"). Such agreement specifically gave each General Partner a right of first refusal with respect to a sale of the Property. The May 29 Agreement provides as follows:

> MODIFIED RIGHT OF FIRST REFUSAL: At any time after 30 days after the date hereof, either GP in each of the entities (the "offering party") will have the right to market and sell (subject to the following right of first refusal) any of the 5 properties owned by the respective entities for sale (including, without limitation, to a condominium converter). Each property would be offered as a whole. Partial interests could not be offered. Upon receipt of a bona-fide, third party written offer to purchase a property that the offering party is prepared to accept, the written offer and all pertinent details would be presented to the other GP. That GP would then have 20 days to either agree to the sale to the third-party (in which event the property would be sold in accordance with the terms of the offer), or to purchase the offering party's interest and all related or affiliated limited partnership interests of the offering party (collectively, the "selling parties") at a price that is equivalent to the amount the selling parties would have received had the property been sold to the third party upon the terms of the offer.

#713201 v1 \18955 \001

4

13.     As set forth more fully below, Weisman has ignored the Trust's rights as a General Partner and continued to act as if he were the sole General Partner of the Partnership. Moreover, Weisman has refused to acknowledge the Trust's valid exercise of its right of first refusal under the May 29, 2006 agreement.

### Peter Weisman's Wrongful Acts

14.     Without consulting with or receiving the consent of the Trust, which shares equal managerial authority and power with Weisman under the Agreement, or consulting with or receiving the consent of Danielle Gardner (until on or about September 19, 2006) and Tom Frayne (after September 19, 2006), who have each served as a Co-Manager of P&J Realty subsequent to Joe Gardner's death, Weisman has unilaterally taken actions on behalf of the Partnership.

15.     Weisman has excluded the Trust from discussions and decision-making concerning the Partnership and the future of the Property.

16.     Claimants have learned that Weisman has engaged a firm which has provided him with a valuation of the Property in the amount of $37 million.

17.     Claimants have also learned that Weisman, through his attorney, Marc Lebow, has taken steps to acquire air rights from the Metropolitan Transportation Authority, the owners of a generator plant located next to the Property.

18.     Upon information and belief, Weisman explored the possibility of a condominium conversion of the Property over the objection of the Trust.

#713201 v1 \18955 \001

5

19.     Claimants have learned that Weisman has conferred with an industry expert, Julie Pham of the Corcoran Group, to analyze a potential condominium conversion of the Property.

20.     Upon information and belief, Weisman has entered into a brokerage agreement on behalf of the Partnership, without consulting with or receiving the approval of the Trust.

21.     Claimants have further learned that Weisman has already spoken to an attorney about the possibility of converting the Property to a condominium.

22.     Weisman, or employees acting at his direction, have held meetings concerning the Partnership and the future of the Property without advising the Trust.  The Trust has been excluded from such meetings.

23.     Weisman has not provided the Trust with any information or documents received by him, purportedly on behalf of the Partnership, with respect to, among other things, a potential condominium conversion of the Property.

24.     Over the Trust's objection, Weisman has retained his personal attorney, Marc Lebow, to represent the Partnership.  Because Mr. Lebow also represents Weisman personally in his disputes with the Trust, Mr. Lebow has a clear conflict of interest, and this conflict has resulted in information being withheld from the Trust and/or decisions being made without the Trust's input or consent.  Furthermore, the Trust has asked Mr. Lebow to cease his representation of the Partnership, yet he has done nothing to alleviate this conflict.

25.     The actions described above in paragraphs 12 through 24 constitute violations of the Agreement and violations of Weisman's fiduciary duties.

#713201 v1 \18955 \001

6

26.    Weisman's actions, described above, violate Section 12 of the Agreement, which vests each general partner with equal management powers. His conduct also violates Section 5(b) of the P&J Realty Agreement.

27.    Weisman's exploration of a potential condominium conversion of the Property, along with his other actions, violates his fiduciary duty to his partners.

## The Partnership Operates Through P&J Realty

28.    Upon information and belief, the Partnership, long before the death of Joseph Gardner, appointed P&J Realty to act as its agent for purposes of managing and operating the Partnership and the Property.

29.    Section 5(b) of the Operating Agreement of P&J Realty Management, LLC (the "P&J Agreement") provides, in relevant part, as follows with respect to the authority to manage the business and affairs of P&J Realty:

> b. The Managers shall have exclusive authority to manage and control the business and affairs of the Company although any manager may participate in ministerial and other non-management activities of the Company. Pursuant to the foregoing, the Managers shall have all of the rights and powers as Managers provided by law subject only to such restrictions contained in this Agreement. Any actions taken by the Managers shall constitute the act of, and serve to bind, the Company. In dealing with the Managers acting on behalf of the Company, no person shall be required to inquire into the authority of such Manager to bind the Company. All decisions of the Managers shall be unanimous, although following a decision by the Managers, any one Manager can effectuate such decision (by signing of documents, etc.).

(Emphasis supplied.)

30.    Pursuant to the terms of the P&J Agreement, there are to be two Managers of P&J Realty, one representing the Gardner family and one representing the Weisman family. The

#713201 v1 \18955 \001

7

original Managers were Joseph Gardner and Weisman. Upon the death of Joseph Gardner, and pursuant to the terms of the P&J Agreement, Danielle Gardner was designated to act as his successor Manager. On or about September 19, 2006, Tom Frayne succeeded Danielle Gardner as Manager on behalf of the Gardner family interests.

31.    As a matter of practice, all of the partnerships and properties held by Joseph Gardner and Weisman have always been managed and operated through P&J Realty out of P&J Realty's offices. Indeed, the Partnership's business has been operated out of a master bank account in the name of P&J Realty and work necessary to run the business has been performed by P&J employees.

32.    To the extent that Agreement is not clear with respect to how the Partnership was to operate, which it is, the panel must look to the terms of the P&J Realty Agreement as all of the Partnership's business was conducted through P&J Realty. The P&J Realty Agreement makes it clear that no decision may be made without the consent of both Managers; namely, at the present time, Weisman and Tom Frayne.

### Weisman's Refusal To Recognize Claimants' Valid Exercise Of The Right Of First Refusal

33.    On March 2, 2007, Weisman sent a letter to Danielle Gardner accompanied by a contract dated March 1, 2007 to sell the Property for $43,500,000.00. In the letter, Weisman advised Danielle Gardner that she had twenty days from the date of the letter to match the offer in accordance with the May 29 Agreement. The contract called for the sale to close twenty-five days from March 1, 2007.

#713201 v1 \18955 \001

34.    By letter dated March 21, 2007, Danielle Gardner, on behalf of the Trust, notified Weisman that the Trust was exercising its right of first refusal in accordance with the conditions stated in the May 29 Agreement.  Specifically, Ms. Gardner advised Weisman:

> … the Trust agrees to purchase the Partnership interests held by you and/or your affiliates (the "Weisman Interests") for a purchase price (the "Purchase Price) equivalent to the net proceeds that the Weisman Interests would have received had the Property been sold to a third party for $43,500,000 …

35.    The Trust tendered in escrow a deposit of $250,000 toward the Purchase Price, which deposit exceeded, on a percentage basis, the offeror's deposit, adjusted for the Purchase Price of the Weisman Interests.

36.    In the March 21 letter, the Trust asked Weisman to have his counsel contact the Trust's counsel in order to coordinate issues concerning the sale of the Weisman Interests to the Trust.  To date, neither Weisman nor his counsel has responded to the Trust's exercise of its right of first refusal.

37.    Upon information and belief, Weisman is preparing to sell the Property in violation of the Trust's exercise of its right of first refusal under the May 29 Agreement.

38.    By ignoring the Trust's March 21 letter, Weisman has repudiated the Trust's proper exercise of the right of first refusal pursuant to the terms of the May 29 Agreement.

39.    The Trust is entitled to specific performance of the sale of the Weisman Interests to the Trust pursuant to the terms of the May 29 Agreement and the Trust's letter exercising its right of first refusal.

#713201 v1 \18955 \001

## Dispute Resolution Under the Agreement

40.    Section 11 of the Agreement provides that:

In the event of any dispute between the parties hereto arising under
or relating to this agreement, such dispute shall be resolved by
arbitration in New York City in accordance with the rules then
obtaining of the American Arbitration Association.

41.    Accordingly, in light of the dispute described above, Weisman must

submit to the jurisdiction of this panel.

## The Claims

42.    As set forth above, Weisman has:

(a)    acted in contravention of the terms of the Agreement, thereby
breaching it; and

(b)    acted in contravention of the terms of the May 29 Agreement,
thereby breaching it; and

(c)    violated his fiduciary duties; and

(d)    violated the partnership laws of the State of New York.

43.    Claimants are entitled to the following relief based upon the allegations set

forth herein:

(a)    specific performance of the sale of the Weisman Interests to the
Trust in accordance with the terms of the May 29 Agreement
and/or interim injunctive relief preventing Weisman from selling
the Property to another party while the arbitration is pending;

(b)    a permanent injunction prohibiting Weisman from violating the
Agreement and his fiduciary duties by, among other things, taking
actions without receiving the consent of the Trust and excluding
the Trust from the business affairs of the Partnership;

(c)    an accounting as to the affairs of the Partnership as well as all
information and documents obtained by Weisman, purportedly on
behalf of the Partnership, since the death of Joseph Gardner to the

extent that such information and/or documents have not been provided to the Trust; and

(d)    reimbursement of attorneys' fees, costs and expenses incurred in this arbitration, in accordance with the terms of the Agreement.

Claimants also reserve the right to amend this pleading and Claimant's request for relief after review of documents to be produced and other appropriate discovery of the facts.

Claimants request such other and further relief as the panel deems equitable and just.

Dated: New York, New York
      March 29, 2007

MORRISON COHEN LLP

By: _____
     V. David Scharf
     David A. Piedra
     Jay R. Speyer

909 Third Avenue
New York, New York 10022
(212) 735-8600
Attorneys for Claimants

#713201 v1 \18955 \001

11