# EXHIBIT F

Peter E. Weisman
160 Associates L.P.
104 Fifth Avenue
10th Floor
New York, NY 10011

March 2, 2007

**BY HAND DELIVERY AND**
**EMAIL (DBG121@AOL.COM)**
Ms. Danielle Gardner
220 West 15th Street
New York, NY 10011

Re:    160 Associates L.P.
       152-60 West 16th Street

Dear Danielle:

Attached is a Contract dated March 1, 2007 to sell 152-60 West 16th Street to Benjamin Shaoul for $43,500,000.00 all cash. Pursuant to Schedule D, paragraph 7, the Closing under the Contract is scheduled for March 26, 2007

Pursuant to our May 29, 2006 agreement, you have 20 days from the date of this letter to match this offer including closing in 25 days.

I am happy to discuss any particulars with you, anyone in your family, or your advisors Tommy and/or Howard.

Sincerely yours,

Peter E. Weisman
General Partner

Attachment

Cc:    Y. David Scharf, Esq. (w/enclosures and U.S. Mail)
       Mark D. Lebow, Esq. (w/o enclosures)

# EXHIBIT G

Danielle Gardner
220 West 15th Street
NY, NY 10011

March 21, 2007

**VIA E-MAIL AND FACSIMILE**

Peter E. Weisman
160 Associates L.P.
104 Fifth Avenue
10th Floor
New York, NY 10011

Re:    160 Associates L.P. (the "Partnership")
       152-160 West 16th Street (the "Property")

Dear Peter:

In response to your letter of March 2, 2007, in accordance with the May 29, 2006 right of first refusal agreement, the Trust agrees to purchase the Partnership interests held by you and/or your affiliates (the "Weisman Interests") for a purchase price (the "Purchase Price") equivalent to the net proceeds that the Weisman Interests would have received had the Property been sold to a third party for $43,500,000 and the net proceeds (i.e., the gross purchase price less the costs of discharging any mortgages or encumbrances, any brokerage commissions, transfer taxes, attorneys fees and other customary costs of closing) distributed pro rata to the partners of the Partnership.

I have also tendered in escrow to Morrison Cohen LLP a deposit of $250,000 toward the Purchase Price, which exceeds, on a percentage basis, the offeror's deposit, adjusted for the Purchase Price of the Weisman Interests. The Purchase Price calculation includes a 3% commission consistent with previous Massey Knakal agreements. I am forced to tender the deposit to Morrison Cohen LLP because the Trust cannot deposit funds with Mr. Lebow, who has acted improperly in representing you individually, while simultaneously representing partnerships in which the Trust, as a co-general partner, has objected to and continues to object to. Unfortunately, Mr. Lebow has not responded in any way or withdrawn his representation of the partnerships. Therefore, he remains in a clear conflict of interest. I reiterate my demand that you cease using Mr. Lebow or his firm for any of the partnership transactions. We are happy to tender the deposit to an alternative transactional attorney.

Accordingly, in connection with your sale of the Weisman Interests to the Trust, please have your counsel contact David Scharf to coordinate any further issues and the closing. Given that

Peter E. Weisman
March 21, 2007
Page 2

the offer does not contain a time-of-the-essence closing date, the Trust would propose to close within sixty days of this letter.

Very truly yours,

Danielle Gardner, as Trustee
Estate of Joseph H. Gardner

cc:    Mark D. Lebow, Esq. (via e-mail)
       Y. David Scharf (via email)

# EXHIBIT H

# SOKOLOW CARRERAS LLP

ATTORNEYS AT LAW
770 LEXINGTON AVENUE, SIXTH FLOOR
NEW YORK, NEW YORK 10021-8165
TEL: 212-935-6000   FAX: 212-935-4865

April 30, 2007

**VIA FAX AND EMAIL**
Y. David Sharf, Esq.
Morrison Cohen LLP
909 Third Avenue, 27th Floor
New York, NY 10022

> Re:   **Seller: 160 Associates L.P. ("Seller")**
> **Purchaser: Benjamin Shaoul ("Purchaser")**
> **Premises: 152-40 West 16th Street ("Property")**

Dear David:

Mr. Weisman forwarded to my attention your client's letter dated March 21, 2007 wherein a Trust established under the Will of Joseph H. Gardner purported to exercise the May 29, 2006 "right of first refusal agreement" to "purchase" the above Property. Pursuant to that letter, the Trust stated that it will "agree to purchase" the "Weisman Interests" for a purchase price equivalent to the net proceeds that the Weisman Interests would have received had the Property been sold to a third party for $43,500,000 (the "Price"). The Trust stated that it deposited $250,000 with your firm and that it will "close" the purchase within 60 days.

The March 21, 2007 letter from your client further stated that your client would deduct from the Price "transfer taxes, attorneys [sic] fees and other customary costs of closing" even though a purchase of the Weisman Interests would invoke no such costs. In order to mach the Price, your client would have been required to subtract the amount of mortgage liens on the Property from the Price and pay 29% thereof for the "Weisman Interests". The Purchaser also agreed to pay the transfer taxes, so that the Weisman Interests will not be obligated to pay them or any portion.

Your client's March 21, 2007 letter failed to invoke a valid exercise of the "Modified Right of First Refusal" set forth in the May 29, 2006 agreement.

The agreement in pertinent part states:

> Upon receipt of a bona fide, third party written offer to purchase a property that the offering party is prepared to accept, the written offer and all pertinent details would be presented to the other GP. That other GP would then have 20 days to either agree to the sale to the third-party (in which event the property would then be sold in accordance with the terms of the offer), or to purchase the offering party's interest and all related or affiliated limited partnership interests of the offering party....

Thus, within 20 days of Mr. Weisman's presentation on March 2, 2007 of the written contract ("Contract") pursuant to which the Purchaser contracted to purchase the Property for the Price, your client was required to either agree to the sale to the Purchaser or purchase the Weisman Interests. The Trust has neither agreed to the sale to the third party nor has it purchased the Weisman Interests within this 20-day period. In fact, 58 days have now elapsed.

Having failed to purchase the Property and having failed also to purchase the Weisman Interests within the applicable period, the Trust failed to exercise the "Modified Right of First Refusal." Consequently, Seller will be proceeding to sell the Property to the Purchaser pursuant to the Contract.

Please be guided accordingly.

Very truly yours,

Mark D. Lebow

Cc:    Mr. Peter E. Weisman (via Email)

2

# EXHIBIT I

# MorrisonCohen LLP

Y. David Scharf
Partner
(212) 735-8604
dscharf@morrisoncohen.com

May 1, 2007

## VIA FACSIMILE AND E-MAIL

Mark D. Lebow, Esq.
Sokolow Carreras LLP
770 Lexington Avenue, 6th Floor
New York, NY 10021-8165

> Re:    160 Associates L.P. (the "Partnership")
>        152-160 West 16th Street (the "Property")

Dear Mark:

I have reviewed your letter from yesterday concerning the Trust's exercise of its right of first refusal on March 21, 2007 consistent with the terms of the May 29, 2006 agreement between our clients (the "May 29 Agreement"). Contrary to your erroneous interpretation not provided until forty days after Danielle Gardner's March 21 letter (the "March 21 Letter"), the Trust did validly exercise its right of first refusal pursuant to the terms of the May 29 Agreement. By his failure to recognize the Trust's exercise and sell his interests in the Partnership to the Trust, your client is in breach of the terms of the May 29 Agreement.

As stated in the March 21 Letter, the Trust agreed to purchase the "Weisman Interests" for a purchase price (the "Purchase Price") equivalent to that which the Weisman Interests would have received had the Property been sold to a third party for $43,500,000 and the net proceeds (i.e., the gross purchase price less the costs of discharging any mortgages or encumbrances, any brokerage commissions, transfer taxes, attorneys fees and other customary costs of closing) distributed pro rata to the partners of the Partnership. In your letter, you selectively quote from the May 29 Agreement and omit the following critical language which describes the price to be paid by the party exercising the right of first refusal:

> ... a price that is equivalent to the <u>amount the selling parties would have received had the property been sold to a third party upon the terms of the offer</u>.

(Emphasis supplied.) The terms of the Trust's exercise of the right of first refusal were thus appropriate in that it is irrelevant whether closing costs would be incurred through a sale of only the Weisman Interests. What Mr. Weisman would have received in a third party sale would be net of those items.

# MorrisonCohen LLP

Mark D. Lebow, Esq.
May 1, 2007
Page 2

As for your contention that Benjamin Shaoul agreed to pay the transfer taxes pursuant to the terms of the March 1, 2007 agreement that he entered into with your client (the "March 1 Agreement"), that assertion is belied by the language of the contract itself (see § 10.12) and is also irrelevant. If Mr. Shaoul renegotiated and agreed to pay the transfer taxes after your client provided the March 1 Agreement to Danielle Gardner, such obligation has no effect for purposes of the right of first refusal as it does not alter the terms that were presented to the Trust. Regardless, your point is immaterial because the Trust agreed that the Purchase Price would be equivalent to the net proceeds distributed pro rata to the partners of the Partnership pursuant to the offer procured by your client. Even if Mr. Shaoul had agreed to pay the transfer taxes in the March 1 Agreement, the Trust's exercise would still be valid.

In the March 21 Letter, the Trust requested that you, notwithstanding your clear conflict of interest in the matter, contact me to coordinate any further issues and the closing. Neither you nor your client contacted me or the Trust to do so. Consequently, the Trust is not obligated to close within sixty days of the date of the March 21 letter (although we note that only 41 days have elapsed at this time). Furthermore, pursuant to the terms of the May 29 Agreement, the Trust only had to agree to purchase the Weisman Interests within twenty days of its notification of any offer for its exercise to be valid and it fulfilled that obligation. Since the Trust has exercised its right of first refusal, your client no longer has authority to unilaterally sell the Property. Any purported sale of the Property to Mr. Shaoul or any other third party would be invalid and only lead to further litigation. I remind you that my client's proper exercise of the right of first refusal is now an issue in the arbitration pending concerning the Partnership and that my clients have sought appropriate relief from the panel of arbitrators in that proceeding.

The Trust remains ready, willing and able to close on its purchase of the Weisman Interests. Please be advised that my clients reserve all of their rights in connection with this matter and intend to take any and all actions necessary to enforce such rights. Accordingly, I caution you and your client against any attempt to proceed with a sale of the Property to Mr. Shaoul.

Very truly yours,

Y. David Scharf

cc:    Danielle Gardner (via email)

# EXHIBIT J

# SOKOLOW CARRERAS LLP

ATTORNEYS AT LAW
770 LEXINGTON AVENUE, SIXTH FLOOR
NEW YORK, NEW YORK 10021-8165
TEL: 212-935-6000   FAX: 212-935-4865

May 3, 2007

**VIA E-MAIL**
Y. David Scharf, Esq.
Morrison Cohen LLP
909 Third Avenue
27th Floor
New York, NY  10022

Re:    160 Associates L.P. (the "Partnership")
152-60 West 16th Street (the "Property")

Dear David:

There is no mystery to buying out the Weisman Interests in this Property.  There is no "closing," no contract, no transfer taxes, no attorneys' fees, no title company and one page of paperwork.

If your client really wants to purchase the Weisman Interests, she (1) takes the purchase price contract offer of $43,500,000; (2) subtracts the amount of the mortgage liens currently on the Property of $4,691,017 ( a number which Tommy, Christian or I can update for you daily); (3) divides the total by 29%; (4) sends a bank of certified check (or wire transfer) to Pete for the sum of $12,414,605 together with garden-variety partnership interest assignments, and (5) instructions to hold the check in escrow until the one- page partnership transfer forms are duly signed and returned.  If there is cash or other assets in the Partnership at the time, we should also withdraw 29% thereof (which we can do ourselves).

You have not attempted to do any of these steps.  If you do not follow these simple self-evident, unambiguous and elementary steps, your client has not "matched" nor bought out the Weisman Interests.  We have a contract vendee (of which you are fully aware) and are obligated to close if you do not match or buy the Weisman Interests.  We cannot pretend that your client has bought the Weisman Interests when she does nothing at all except write ambiguous, ambivalent and self-serving letters.

If you really want to buy the Weisman Interests, you have until the end of the week to do so (or tell me you are going to do so) but only if your client follows the above five steps exactly, each of which is self-evident and simple.

Sincerely yours,

Mark D. Lebow

Cc:    Mr. Peter E. Weisman
       Robert I. Bodian, Esq.

# EXHIBIT K

# MorrisonCohen LLP

Y. David Scharf
Partner
(212) 735-8604
dscharf@morrisoncohen.com

May 4, 2007

**VIA E-MAIL**

Mark D. Lebow, Esq.
Sokolow Carreras LLP
770 Lexington Avenue, 6th Floor
New York, NY 10021-8165

          Re:    160 Associates L.P. (the "Partnership")
                  152-160 West 16th Street (the "Property")

Dear Mark:

We are in receipt of your letter from yesterday and write to briefly respond thereto.

We reiterate our positions as set forth in my May 1 letter. The terms of the May 29 Agreement are clear and unambiguous. The amount at which my clients are entitled to purchase the Weisman Interests is "the amount the selling parties would have received had the property been sold to a third party upon the terms of the offer." Nothing you say or do can change that language. As set forth in my May 1 letter, the Trust stands ready to proceed with its purchase of the Weisman Interests pursuant to those terms. Moreover, the Trust has placed $250,000 in escrow with my firm and thus has matched the offer from Mr. Shaoul in all respects.

Nevertheless, we are confused by the calculation set forth in your letter and request that you clarify it so that we can properly evaluate the letter. How do you arrive at a price of $12,414,605 for the Weisman Interests pursuant to the numbers set forth in your letter? We arrive at a significantly lower number for such price even when using your methodology. Please also provide us with any paperwork (partnership transfer or assignment forms, etc.) that you believe would need to be executed in connection with the Trust's purchase of the Weisman Interests.

Obviously, this letter is written without prejudice to any of my clients' rights, all of which are reserved. If your client proceeds to attempt to sell the Property to Mr. Shaoul or any other third party, we will avail ourselves of all legal options, hold your client responsible, and unwind the transaction. Please be guided accordingly.

Very truly yours,

*Y. David Scharf (mc)*

Y. David Scharf

#748832 v1 \18955 \001

# Morrison Cohen LLP

Mark D. Lebow, Esq.
May 4, 2007
Page 2


cc:    Danielle Gardner (via email)

# EXHIBIT L

# L E B O W  &  S O K O L O W  L L P

ATTORNEYS AT LAW
770 LEXINGTON AVENUE, SIXTH FLOOR
NEW YORK, NEW YORK 10065-8165
TEL: 212-935-6000  FAX: 212-935-4865

December 13, 2007

**VIA E-MAIL AND U.S. MAIL**
Jonathan Mechanic, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004

Re:     **160 Associates L.P.**
        **152-60 West 16th Street**

Dear Jon:

We are the attorneys for Peter Weisman.  We write to you in your capacity as attorneys for Danielle B. Gardner.

On March 2, 2007, Mr. Weisman sent to Ms. Gardner a letter enclosing a Contract dated March 1, 2007 to sell 152-60 West 16th Street to Benjamin Shaoul for $43,500,000.00 all cash.  A copy of Mr. Weisman's letter and the Contract is enclosed for your information.

Notice was given then to Ms. Gardner to match the offer pursuant to the May 29, 2006 agreement between Mr. Weisman and Ms. Gardner.

Since that time, we entered into "global settlement discussions" and those discussions have unfortunately not succeeded.  While you have requested that we assemble for one further meeting, Mr. Weisman thinks that any such attorneys' meetings will not be any more productive than our most recent meetings.  He will, however, continue to pursue settlement discussions with Dan Cunningham as an intermediary.

Please take notice that, pursuant to the May 29, 2006 agreement, Ms. Gardner has 20 days from the date of this letter to match the renewed offer contained in the annexed Contract. If she accepts the offer, she is required to make a contract deposit of $1,000,000.00 in 20 days and to close in 25 days from the date of this letter.

Sincerely yours,

Mark D. Lebow

Cc:    Mr. Peter Weisman
       Robert I. Bodian, Esq.

2

# EXHIBIT M

# MorrisonCohen LLP

January 2, 2008

## VIA FACSIMILE AND FEDERAL EXPRESS

Mark Lebow, Esq.
Lebow & Sokolow LLP
770 Lexington Avenue, Sixth Floor
New York, New York 10065

Re:    160 Associates L.P. (the "Partnership")
       152-160 West 16th Street (the "Property")

Dear Mark:

This letter responds to your letter dated December 13, 2007 in which Mr. Weisman resubmits his March 2, 2007 letter and the Contract of Sale dated March 1, 2007 to sell the Property to Mr. Shaoul (the "March 2nd letter"), which has already been responded to by Ms. Gardner, in accordance with the May 29, 2006 right of first refusal agreement (the "May 29 Agreement"). Your contention that Mr. Weisman's resubmission of the March 2nd letter constitutes a "renewed offer" is curious. Mr. Weisman's resubmission of the March 2nd letter does not change the fact that he is in breach of his obligations under the May 29 Agreement by failing to sell certain interests in real property held by him and Weisman Associates, L.P. with respect to the Property (the "Weisman Real Property Interests") to the Trust. Although Ms. Gardner's position with respect to the issues raised by the March 2nd letter has not changed, I provide a summary of the correspondence between the parties so as to once again clearly set forth Ms. Gardner's position in this matter.

On March 2, 2007, Mr. Weisman first delivered the March 2nd letter. On March 21, 2007, Ms. Gardner explained that, in accordance with the May 29 Agreement, the Trust agreed to purchase the Weisman Real Property Interests for an amount that Mr. Weisman and Weisman Associates, L.P. would have received had the Property been sold to a third party for $43,500,000.00 and the net proceeds (i.e., the gross purchase price less the costs of discharging any mortgages and encumbrances, any commission, transfer taxes, attorneys' fees and other customary closing costs) distributed pro rata to the partners of the Partnership. Ms. Gardner also explained that she tendered in escrow to this firm a deposit of $250,000.00 toward the purchase price, which exceeds on a percentage basis, Mr. Shaoul's deposit, adjusted for the purchase of the Weisman Real Property Interests and thus matched Mr. Shaoul's offer in all respects. Your recent suggestion that Ms. Gardner is now required to provide a contract deposit of $1,000,000.00 simply makes no sense and therefore requires no response. Ms. Gardner also requested that you, notwithstanding your clear conflict of interest, contact me to coordinate the closing, which the Trust proposed would occur within sixty days of the March 2nd letter. Neither

# MorrisonCohen LLP

Mark Lebow, Esq.
January 2, 2008
Page 2

you nor Mr. Weisman contacted me. Instead, forty days after Ms. Gardner's March 21st letter, on April 30, 2007, you sent a letter contending that Ms. Gardner's March 21st letter was an invalid exercise of the Trust's right of first refusal because the Trust did not purchase the Weisman Real Property Interests within twenty days of the March 2nd letter and setting forth the amount due to Mr. Weisman based upon an erroneous interpretation of the May 29 Agreement. By failing to coordinate the sale of the Weisman Real Property Interests to the Trust without justification, Mr. Weisman breached the terms and conditions of the May 29 Agreement.

Mr. Weisman is still in breach of the terms and conditions of the May 29 Agreement. However, without prejudice to any of my clients' rights, all of which are reserved, please be advised that the Trust has always been and is still ready, willing and able to purchase the Weisman Real Property Interests for a price equivalent to the net proceeds that Mr. Weisman and Weisman Associates, L.P. would have received had the Property been sold to a third party for $43,500,000.00. Please also be advised that the Trust has placed $250,000.00 in escrow with my firm and thus has matched Mr. Shaoul's offer in all respects. Because the Trust has exercised its right of first refusal, pursuant to the terms of the terms of the May 29 Agreement, your client still does not have the authority to unilaterally sell the Property and therefore any attempt to do so would be unlawful. To that end, I remind you that your client's proper exercise of his right to sell the Property is an issue in the arbitration pending concerning the Partnership and that my clients have sought the appropriate relief in that proceeding.

The Trust has been and is still ready, willing and able to close on the purchase of the Weisman Real Property Interests in accordance with the May 29 Agreement, within 25 days of your December 13, 2007 letter. Please contact me immediately to coordinate the closing. This letter is written without prejudice to any of my clients' rights, all of which are expressly reserved. Also, please be advised that if your client attempts to sell the Property to Mr. Shaoul or any third party in violation of my clients' rights, my clients will not hesitate to avail themselves of any and all legal options, including, but not limited to any and all attorneys' fees and costs, that they incur as a result of responding to any such conduct.

Very truly yours,

Y. David Scharf

cc:    Danielle Gardner (via facsimile)
       Benjamin Shaoul (via Federal Express)
       Jonathan Mechanic, Esq. (via facsimile)

# EXHIBIT N

# LEBOW & SOKOLOW LLP

ATTORNEYS AT LAW
770 LEXINGTON AVENUE, SIXTH FLOOR
NEW YORK, NEW YORK 10065-8165
TEL: 212-935-6000  FAX: 212-935-4865

January 7, 2008

<u>**VIA E-MAIL AND U.S. MAIL**</u>
Y. David Scharf, Esq.
Morrison Cohen LLP
909 Third Avenue
27th Floor
New York, NY 10022

> Re:    160 Associates L.P. ("the Partnership")
>        <u>152-160 West 16th Street (the "Property")</u>

Dear David:

Thank you for your letter dated January 2, 2008. The unsuccessful global settlement negotiations intervened after I initially sent you the contract dated March 1, 2007 ("Contract") to sell the Property to Benjamin Shaoul ("Purchaser"). I truly regret that after so much time and effort the global settlement failed, although all parties seem to have agreed (at least in principle) to allocate and divide every jointly-owned property except for the retail properties. When your client was unwilling to discuss a division of the retail properties, I had no choice but to send you my letter dated December 13, 2007 giving your client anew the right to match the terms and conditions of the Contract.

As you requested, we consider your January 2, 2008 letter to constitute an election by your client to purchase what you call the "Weisman Real Property Interests" in the Property. You have asked that I contact you to coordinate the closing of your client's purchase of the Weisman Interests. This letter does so. Because we negotiated key elements of this transaction as part of the unsigned Settlement Agreement (most of which was prepared by Fried Frank), I suggest that we generally use most of those guidelines for our closing.

## Transfer of Weisman Interests

Weisman owns a 1% general partner interest and Weisman Associates owns a 28% limited partnership interest in the Partnership (Settlement Agreement, page 1, first Whereas clause). The method to transfer the Weisman Interests accurately is described in Article 1.1 of the draft Settlement Agreement.

## Purchase Price

The purchase price is currently set forth in Article 1.2(a) of the draft Settlement Agreement.  Basically, we agreed to split evenly the phantom, non-existent and unpayable transfer taxes, a solution that I bitterly opposed but nevertheless doubt that it is in anyone's interests to revisit.  Pursuant to Article 1.2(a), we take 29% of [$43,500,000 minus $657,937 (which is 50% of the imputed phantom transfer tax cost) minus the current outstanding principal balance in the existing mortgage (which is currently $4,631,116 as of 12/30/07)] which currently equals $11,081,174.63.  This is the approximate amount which your client must pay as the purchase price.

## Down Payment

The Contract Purchaser placed a $1,000,000 down payment with me.  I suggest that your client deposit with me as the Seller's attorney (the normal practice) 29% of that amount or $290,000 within ten days of today.

## Apportionments, Etc.

Apportionments for mortgage escrows and other Partnership assets are accurately set forth in Article 1.3(f) and 1.3(g) of the draft Settlement Agreement.  It would also seem foolish to revisit those details.  No other adjustments are required post-closing.

The Partnership's restructuring at the time of closing is correctly specified in Article 1.5(b)(i) of the draft Settlement Agreement and also need not be changed.

I have no problem with incorporating any of the representations and warranties in Articles II and III (in so far as they pertain to this Property) if you wish.

## Other Conditions

Your client is also required to match the other terms and conditions of the Contract.  Article 15 of the Contract grants the present tenants of units 6B, 6D and 6E the option "to move in the building to another apartment of equal or greater size as selected by the landlord at no increase in rent for the balance of the terms of the respective leases then in effect and for two years thereafter at a market rent (determined by the average square foot rental for all apartments in the building leased during calendar year 2006) less 20%."  We do require your client to abide strictly by this provision in the Contract, except that no lease for 6B, 6D and 6E need be extended past June 30, 2009.

We shall not require DBG to match any other provisions in the Shaoul Contract except as set forth above.  Mr. Weisman will pay Massey Knakal's brokerage commission.

**<u>Closing Date</u>**

If this letter is satisfactory, I propose that we treat it as a term sheet and close 20 days from today.

Sincerely yours,

*Mark*

Mark D. Lebow

Cc:   Mr. Peter E. Weisman
      Jon Mechanic, Esq.

# EXHIBIT O

Fried, Frank, Harris, Shriver & Jacobson LLP

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



FRIED FRANK

Direct Line:  212.859.8222
Fax:  212.859.4000
Jonathan.Mechanic@friedfrank.com

January 15, 2008

**VIA FACSIMILE AND FEDERAL EXPRESS**
Mark Lebow, Esq.
Lebow & Sokolow LLP
770 Lexington Avenue, Sixth Floor
New York, New York 10065

Re:  160 Associates L.P. (the "160 Partnership") 152-160 West 16th Street (the "West 16th Property") and 14-15 Street Associates L.P., 225-27 West 14th Street, and 222-24 West 15th Street (the "West 14th and 15th Properties")

Dear Mark:

This letter responds to your letter dated January 7, 2008 which inaccurately described the parties' previous attempts to reach a global settlement, and which set forth a proposal regarding the settlement of the West 16th Property.

It is worth clarifying that Ms. Gardner has always been and remains a proponent of dividing the retail properties in an equitable manner and finalizing a global settlement. Prior to signing the August 2, 2007 letter of intent ("LOI"), despite my clients' repeated attempt to discuss the settlement of the retail properties, Mr. Weisman stated that he had no interest in discussing the disposition of these properties and therefore refused to do so. On August 2, 2007, Mr. Weisman executed the LOI, which, based upon Mr. Weisman's refusal to discuss the disposition of the retail properties, left the retail properties in joint ownership to be managed by an independent management company. Then, after months of negotiating the LOI and a comprehensive settlement agreement consistent with the LOI and Mr. Weisman's refusal to agree to my clients' repeated request to include a disposition of the retail properties, Mr. Weisman took the position that he would not execute the negotiated settlement agreement without including a disposition of the retail properties. As a result, in a meeting on October 3, 2007, you, Mr. Weisman and I verbally agreed upon a new true global settlement that included the disposition of the retail properties. A week later, Mr. Weisman withdrew his earlier agreement to the new true global settlement. The next formal communication that my clients received was your December 13, 2007 letter in which Mr. Weisman resubmitted his March 2, 2007 letter, which had already been responded to by Ms.

New York • Washington DC • London • Paris • Frankfurt
Fried, Frank, Harris, Shriver & Jacobson LLP is a Delaware Limited Liability Partnership

ffny01\frasted\608581.3

Fried, Frank, Harris, Shriver & Jacobson LLP

Lebow & Sokolow LLP                                    January 15, 2008
                                                       Page 2


Gardner, in accordance with the May 29, 2006 right of first refusal agreement (the
"May 29 Agreement").    The offer contained in your January 7, 2008 letter is
inconsistent with the May 29 Agreement, and cherry-picks the West 16th Property from
the rest of the properties that were an integral part of the global settlement negotiations.

My clients continue to be ready and willing to close on either of the global
settlements previously agreed to by Mr. Weisman and my clients.

Alternatively, my clients are ready and willing to close on the West 16th
Property in accordance with the terms and conditions of the May 29 Agreement,
pursuant to which Mr. Weisman is obligated to sell the "Weisman Real Property
Interests" to the Trust in the manner set forth in our January 2nd letter regarding the
West 16th Property. Ms. Gardner cannot agree to the proposal in your January 7, 2008
letter in the section entitled Other Conditions, based upon, among other things, Ms.
Gardner's duties and obligations that she owes as a partner in the 160 Partnership.

As an additional alternative, my clients are ready and willing to close
simultaneously on both the West 16th Property and the West 14th and 15th Properties in
accordance with the relevant terms of the most recent draft of the global settlement
agreement which we circulated on August 23, 2007.

Please contact me immediately to discuss the closing under any of the foregoing
alternatives. This letter is written without prejudice to any of my clients' rights, all of
which are expressly reserved.

Very truly yours,

Jonathan L. Mechanic

cc:    Danielle Gardner
       Y. David Scharf, Esq.

# EXHIBIT P

# MorrisonCohen LLP

Y. David Scharf
Partner
(212) 735-8604
dscharf@morrisoncohen.com

March 5, 2008

**VIA E-MAIL AND FACSIMILE**

Kimberly F. Claxton, Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, Rhode Island 02914

      Re:    <u>Gardner v. Weisman  (No. 13 101 01642 06)</u>

Dear Ms. Claxton:

We represent Claimants Danielle Gardner and Charlotte Gardner in the above-referenced arbitration proceeding. Settlement discussions between the parties have reached an impasse. Petitioners desire to move forward with this arbitration and to lift the stay. Petitioners hereby request a telephone conference with the Panel to seek an emergency application for interim relief pursuant to Rule 34 of the Commercial Rules.

Petitioners will request the issuance of an injunction to prohibit Respondent from selling the real property at issue in this arbitration to a third party in violation of the parties' partnership agreement and right of first refusal agreement that prevents a sale of the real property to a third party if the right of first refusal is exercised by Petitioners. Petitioners have exercised their right of first refusal. Petitioners seek, among other things, specific performance of their right of first refusal. Respondent, however, has unilaterally determined that it has no obligation under the right of first refusal agreement and is proceeding to sell the real property to a third party. Interim relief from the Panel is necessary on an expedited basis to prevent the real property from being sold to a third party, which would render moot Petitioners' claims for specific performance.

If you have any questions, please do not hesitate to contact me at the number listed above. Thank you for your attention to this time sensitive matter.

Very truly yours,

Y. David Scharf

cc:    Robert I. Bodian, Esq.
       Jay R. Speyer, Esq.

#1165937 v2 \18955 \001